THE STATE, TO THE USE OF SMITH, Respondent, *vs.* PAUL'S EXECUTOR, Appellant.

1. A county or probate court has jurisdiction of a demand against the estate of a decedent, founded upon a bond with a collateral condition.
2. The security in a curator's bond in force at the date of his final settlement, is *prima facie* liable for the amount thereby shown to be in his hands, although received before the bond was given. To render the security in a former bond liable, it must be shown that the money was converted during the period covered by that bond.

*Appeal from St. Louis Circuit Court.*

This was a demand presented in the St. Louis Probate Court for allowance against the estate of Rene Paul, deceased, founded upon alleged breaches of a bond for $4000, executed to the state of Missouri, by said Paul as security, on the 16th of March, 1844, conditioned for the faithful discharge by Frederick W. Beckwith of his duties as curator of Philomena Smith, a minor. This action was brought to the use of Philomena Smith, by Henry Chouteau, her guardian. The breaches assigned were : 1st. That between the 16th of March, 1844, and September, 1851, the sum of $8000 came into Beckwith's hands as such curator, which he failed to account for, or pay over, as required by law, and as demanded by Chouteau, her guardian. 2d. That said Beckwith kept no separate account of the money received by him as curator, but mixed the same with his own, and converted it to his own use. 3d. That

he failed to put such money out at interest upon mortgage or other sufficient security, as by law he should have done. 4th. That he did not make annual settlements of his accounts as such curator. 5th. That in March, 1851, he converted to his own use certain bonds of the city of St. Louis which came to his hands as such curator. 6th. That at his settlement in June, 1850, there was a balance in his hands of $5049 51, which he converted to his own use. 7th. That in September, 1851, he sold and converted to his own use certain bonds of the city of St. Louis which came to his hands as curator. 8th. That he did not put out at interest the balance which was in his hands at his settlement in June, 1850. 9th. That on the 28th of June, 1851, he was ordered to pay over to Henry Chouteau, as guardian of the person of Philomena Smith, the sum of $500, which he failed to pay.

A motion to dismiss for want of jurisdiction was made in the Probate Court and renewed in the Circuit Court, but in both instances overruled.

At the trial in the Circuit Court, the plaintiff offered in evidence the record of the appointment of Beckwith, as curator of Philomena Smith, on the 8th of March, 1843, and the bond sued upon. He then offered the record of the annual settlements of Beckwith, as curator, from 1844 to 1850 inclusive. This last was objected to, because it was not a complete record, and did not contain all the settlements made by said Beckwith, as such curator. The objection was overruled, and the record permitted to be read in evidence. Each of these settlements showed a balance in the hands of the curator, and the settlement of 1850 showed a balance in his hands of $5049 52. It was admitted that Beckwith made no settlement in 1851. The plaintiff also read in evidence a record of the appointment of Henry Chouteau as guardian of the person and estate of Philomena Smith on the 12th of April, 1852; also the order of the Probate Court at the June term, 1851, requiring the curator to pay $500 to Chouteau, as guardian of the person of Philomena Smith. It was proved that a copy of this order was

State, to use of Smith, *v.* Paul's Ex'r.

served on Beckwith, the curator, on the 12th of September, 1851, and a demand made for the money.

The defendant, on his part, offered in evidence a record of the final settlement of Beckwith, as curator, in June, 1852, showing a balance in his hands of $5561 84, and an order by the Probate Court to pay the same to Henry Chouteau, guardian; also a bond executed by Beckwith, as principal, and Louis C. Smith, as security, dated September 19th, 1851, conditioned for the faithful discharge by Beckwith of his duties as curator. It was admitted that Rene Paul died in May, 1851.

The court gave the following instruction asked by the plaintiff, to which the defendant excepted:

"If the jury find that Beckwith, in June, 1850, was indebted to his ward, Philomena Smith, in the sum of $5049 51; that said Beckwith failed to make a settlement in the Probate Court, at the June term, 1851, and failed to pay the $500 ordered by the Probate Court at the June term, 1851, after the same was demanded, and that Paul was his security at that time, the jury ought to find for the plaintiff the amount of such indebtedness, not exceeding $4000, unless the defendant has shown to the satisfaction of the jury that Beckwith, at the date of the bond executed in 1851, had still in his hands the amount of funds belonging to his ward; and the final settlement made in June, 1852, read in evidence, is insufficient for that purpose."

There was a verdict for the plaintiff for $4000.

*Cline & Jamison,* for appellant. 1. The Probate Court has only jurisdiction of an action on a curator's bond where the court has ordered the curator to pay, and in such case, the proceeding must be by *scire facias.* (Sess. Acts of 1850–51, p. 211, § 11. R. C. 1845, tit. Administration, art. 5, § 11, 12, 13 and 14.) The Probate Court cannot render a judgment on a penal bond, for, in such case, the judgment is for the amount of the penalty, with leave to take out execution for the amount of damages sustained. 2. The court below erred in admitting in evidence the certified copy of the accounts and settlements of F. W. Beckwith, as curator, because it did not

contain all the accounts and settlements made by him, and was not a full and complete transcript of the record. 3. The instruction given was erroneous. It required the defendant to prove that the curator did not convert to his own use the balance in his hands at his settlement in June, 1850, whereas it was incumbent on the plaintiff to prove that he did convert it. (17 Mo. Rep. 431.) The final settlement of the curator, made at the June term, 1852, showed a balance against him of $5561 84, (in which was included the balance on hand at the June term, 1850.) The curator was only bound to pay the money in his hands belonging to his ward, when ordered by the Probate Court, and, until then, there was no breach of the bond; and there was no order to pay until the final settlement at the June term, 1852, at which time Louis C. Smith was the security in the bond and liable for the balance. (11 Mo. Rep. 583.) The new bond operated as a discharge of the security in the old one, and of his estate from all liability for the subsequent delinquencies of the curator. (R. C. 1845, tit. Securities, § 17.)

*Glover & Richardson* and *S. Reber*, for respondent. 1. If there was a breach of the bond in which Paul was security, the relator had a "demand" against his estate which could be presented for allowance in the Probate Court. (R. C. 1845, tit. Administration, art. 4, secs. 4 and 8. 10 Mo. Rep. 234.) 2. The instruction given was correct. The controlling idea in it is, that if Beckwith was indebted to his ward, as shown by his settlement, made in June, 1850, and failed and refused to pay her the said $500 which he was ordered by the court in June, 1851, to pay, the presumption was, that he did not pay because he did not have the money of his ward on hand, and the *onus* thereby was put on the defendant, to show that he did have her funds on hand at the date of the last bond. This view is sustained by the case of *Nolley* v. *Callaway County*, 11 Mo. Rep. 447. 3 Strobhart, 327. If he did not have $500 on hand, it is simply absurd to suppose that he had the amount shown by his settlement in June, 1850. The presump-

tion thus raised, was not rebutted by the settlement of June, 1852, showing a balance against him of $5561. The settlement furnishes no evidence that he then had that amount on hand, but merely that he owed that amount. Even if it amounted to a declaration by Beckwith that he then had that amount in his hands, this would be no evidence in favor of him or his security.

SCOTT, Judge, delivered the opinion of the court.

The words of the statute conferring jurisdiction on the county courts, are sufficiently comprehensive to embrace the subject of this suit. The words are, " that the county court shall have jurisdiction to hear and determine all demands against any estate," &c. More comprehensive language could scarcely have been employed. The objection to an action in the county court on a bond with a collateral condition, growing out of the nature of the judgment required by law to be entered in such suits, is more specious than solid. In actions conducted according to the course of the common law, a judgment for the penalty was the logical result from a finding of the issue on a breach for the plaintiff. But as all formal pleadings are disregarded in legal proceedings in the county court, no order is disturbed, nor inconvenience produced, in regarding the damages assessed as the sum for which judgment should be rendered. In the case of *Jewett* v. *Weaver's Adm'r*, 10 Mo. Rep. 234, this court held that an action on a bond, with collateral condition, might be maintained in the county court.

We do not see that the defendant has been prejudiced by the records of the Probate Court used in evidence. If there was any thing in other records paralyzing the effect of those read, the defendant has the benefit of them. It was not necessary, in order to make the settlements evidence, that a record of the whole administration should have been produced. The plaintiff could obtain no advantage by introducing only a portion of the record of the settlements. The whole, when produced,

though by the opposite party, would have the same effect as if introduced at once.

There is nothing in the act of March 3d, 1851, concerning " Probate Courts, executors, administrators, guardians and curators," ( R. C. 1845, p. 209,) which effects this proceeding. The remedy therein given is merely cumulative, and does not take away the action on the bond.

The plaintiff has brought her action without any reliance upon the final settlement. Indeed, that settlement was made under another bond than that on which this suit is instituted, and under which Rene Paul was not liable. The record shows that the default for which this action is brought, did not occur whilst Rene Paul was surety. Nothing more appearing, that is the legal effect of it. From the face of the papers, the surety in the last bond is chargeable with the money sought to be recovered in this suit. Now, as the plaintiff has waived her action on the last bond, and the settlement under it, there is no hardship in imposing on her the burden of the proof that would have exculpated the surety in that bond. She must show that her money was wasted by her curator, whilst Paul was the security. As the law will not presume a default or wrong in the curator, nothing more appearing, the presumption is, that the money was in his hands at the time the last bond was entered into, and, consequently, that Paul, the surety in the first bond, was discharged. In the case of *Farrar & Brown* v. *United States*, ( 5 Pet. ) the sureties of the surveyor general executed a bond, in the penalty of $30,000, conditioned for the faithful discharge of the duties of that officer. Before the execution of the bond, a large sum of money had been placed in the hands of the surveyor. In an action on the bond, the Supreme Court of the United States held that the sureties might show that the money was spent by the surveyor before the bond was executed. So here, the surety in the last bond, nothing more appearing, would be liable for the balance found in the hands of the curator at the last settlement. But the plaintiff, waiving the benefit of this presumption against the last

surety, as she had a right to do, has assumed that there was no money in the hands of her curator at the time of the last bond and settlement. Then she must make good her assumption, and show that her curator spent her money whilst Paul was her surety. This is the legal effect of the record as presented, and its force can not be broken by reading only parts of it.

The neglect of Beckwith, the curator, to make a settlement in 1851, was evidence in the cause, as it showed a breach of the condition of the bond, which breach was a part of the cause of action. So was the failure to pay the $500, and for the same reason. But these circumstances, whilst they might have been considered by the jury in determining whether the money was spent during the time that Paul was surety, were not of themselves sufficient to establish that fact. And on no principle could their establishment by proof throw on the defendant the burden of showing that the money was not made way with while his testator, Paul, was the surety.

The instruction given for the plaintiff was erroneous, and the judgment will be reversed, and the cause remanded, with the concurrence of the other judges.