STATE OF MISSOURI TO THE USE OF THE SOUTHERN BANK OF ST. LOUIS, Respondent, *v.* GEORGE O. ATHERTON AND D. H. ARMSTRONG, Appellants.

1. *Principal and Surety—Corporations—By-laws.*—The negligence of the directors and cashier of a bank in failing to comply with the by-laws of the corporation in examining its affairs, counting its cash, &c., &c., will not discharge the sureties upon the bond of the teller, who has committed a breach of his obligations by applying the moneys of the bank to his own use.

State to use, &c. v. Atherton et al.

2. *Principal and Surety—Bonds—Damages.*—Where the principal in a bond, given to secure the faithful performance of his duties as a teller of a bank, had, previous to the execution of the bond, taken and appropriated to his own use moneys of the bank, and after the giving of the bond had applied moneys received to wrong accounts so as to cover up his defalcation—*held*, that the security was not liable for the defalcation committed before the execution of the bond; and that for the mere misapplication of the moneys subsequently received to wrong accounts, the damages could be only nominal.

3. *Principal and Surety — Witness — Party.* — The principal in a bond, defendant in a suit against whom a judgment by default has been rendered, is a competent witness for his co-defendant, the surety in the bond.

4. *Action — Release — Co-obligors—Bonds.*—The release of one of several co-bligors does not discharge the other parties to the contract.—R. C. 1855, p. 873, § 14.

*Appeal from St. Louis Court of Common Pleas.*

The court gave the instructions asked by each party, as follows :

Plaintiff's instructions.—1. If the jury believe that defendant Atherton, as teller of the Southern Bank, on the 25th of March, 1859, received as such teller from Archibald Gamble, on deposit in said bank, the sum of $744, and then entered the same as a deposit in the pass-book of said Gamble ; and afterwards, and at different days and times between that day and the 25th April, 1859, and while he was still teller, and as such teller, he received from other persons and parties mentioned in the petition, in like manner, on deposit, large sums of money, amounting in the aggregate to over $40,000; and having as such teller so received all of said sums on deposit in said bank, he withheld and withdrew said sums from the bank, and applied the whole amount thereof to his own use, or to purposes not those of the bank,—in such case said Atherton and the securities on his bond became liable and bound in the penalty of the bond for the sums of money so deposited by said parties and withheld and withdrawn from the bank by said Atherton.

[For 2d, see opinion.]

Defendant's instructions, given :

1. Under the issues made by the pleadings, the burden of proof rests on the plaintiff to prove that the money sued for was embezzled or appropriated by G. O. Atherton after the bond read in evidence was made, and unless the plaintiff has shown in evidence to the satisfaction of the jury that said Atherton did embezzle or appropriate to his own use the money in question after the bond sued on was made, the jury should find for defendant.

2. Although the jury may find from the evidence that Atherton, while acting as teller, embezzled or appropriated to his own use some of the money of said bank, yet if the jury find that he embezzled or appropriated said moneys before the bond sued on was made, then as to such moneys the defendant Armstrong is not liable, notwithstanding the jury may also find from the evidence that said Atherton continued in the manner mentioned by the witnesses to elude or delay the discovery of his embezzlement or appropriation of money until after the bond sued on was made.

3. The burden of proof is on the plaintiff. The defendant Armstrong is only responsible for the amount of bank deposits appropriated by Atherton to his own use after the date of the execution of the bond sued on—that is, 21st March, 1859, and before the 25th April, 1859—and it devolves on the plaintiff to establish this amount in evidence to the jury. If the jury are satisfied from the evidence that the entire sum of money, as claimed to have been abstracted from the bank by Atherton upon the final settlement of accounts between him and the bank, had been used by Atherton in his private speculations before the defendant Armstrong became his security, they will find for the defendant Armstrong.

[For No. 4, see opinion.]

To the giving of instructions asked by plaintiff exceptions were duly taken.

Atherton having conveyed property to the bank, by which a large proportion of the defalcation was restored; and Carr

and West, who were with Armstrong on the bond, and who had also been securities on the former bond, and were therefore, in any view of the facts, liable, having paid what the bank esteemed their proportion of the balance, and been released, a judgment was rendered against Armstrong for $6,666.66.

*Napton,* and *Krum, Decker & Krum,* for appellants.

For the reversal of the judgment, reliance is altogether placed upon the two points raised by the instructions, and the exclusion of Atherton as a witness.

I. The instructions are conflicting and irreconcilable, and assume two opposite and contradictory theories of the law. This will be apparent upon a perusal of the 2d instruction given for the plaintiff and the last instruction given for the defendant, which are precisely the antipodes of each other. The only question which could admit of discussion in reference to the point, is, which of these conflicting theories of the law is the correct one? The position of the instruction for the plaintiff is, that if the public officer, during his second term, wrongfully and contrary to his duty withholds entries from the book for the purpose of concealing defalcations or embezzlements of money made during his first term, the securities on the second bond are responsible for the amount abstracted under the first. Our instructions assume the reverse of this to be the law, and assert that each set of securities are responsible for the actual losses or abstractions occurring during their respective periods of securityship; and, as we supposed, all the decisions of this court proceed on this latter hypothesis. The subject has been five times before this court, and in all the cases this is assumed to be the law where there are different sets of securities. Indeed, upon the theory which prevailed in the trial of this case, where defalcations have occurred, the last set of securities must always be responsible whether the money was abstracted during their securityship or that of their predecessors;— a doctrine that would render altogether superfluous and

useless all the investigation made in the cases heretofore decided by the court in reference to the time when defalcations occurred, when each breach of trust occurred, and what amount of damages would be chargeable to each set of securities.—Draffin v. City of Boonville, 8 Mo. 395 ; Todd v. Boone Co., 8 Mo. 431; Nolte v. Callaway Co., 11 Mo. 447 ; State v. Smith, 26 Mo. 226 ; City of St. Joseph v. Merlatt, 26 Mo. 233 ; State to use, &c. v. Paul's exec'rs, 21 Mo. 51.

II. Atherton was a competent witness under the act of February 12, 1857—Sess. Acts, p. 181. This act provides that where one of several defendants has a defence peculiar to himself, and a separate judgment may be rendered, the co-defendants are competent witnesses for him in reference to such defence. This law has been before the court in five cases.—Garnier v. Lebeau, 30 Mo. 229 ; Schoeffer v. Kilmans, 30 Mo. 232 ; Vaughn v. Scade, 30 Mo. 205 ; Kleinmann v. Boernstein, 32 Mo. 314; Alexander v. Shortridge, 33 Mo. 349; Finley v. Robertson, 31 Mo. 384. The same law is copied from the New York Code, No. 397, and the case of Finn v. Gaston, 4 Smith, N. Y. 382, is a decision upon its construction.

III. Atherton was a competent witness after he was defaulted. See Garrett v. Ferguson, 9 Mo. 126; Conn v. Green, 9 Mo. 200; Hawley v. Levy, 8 Mo., and Brown v. Burns, 8 Mo., on this point of default.

WAGNER, Judge, delivered the opinion of the court.

This was an action on a bond in the penal sum of twenty thousand dollars, executed by the defendant Atherton as principal, and Armstrong, West and Carr as sureties to the plaintiff. The bond was dated and executed on the 21st day of March, 1859, and approved on the same day, and conditioned that Atherton should execute and discharge the duties of teller of the Southern Bank of St. Louis with integrity and fidelity, and well and faithfully perform and fulfil the trusts reposed in him, and well and truly, at all times, when thereunto required, account for and render over all

moneys, goods and chattels that might come into his hands or possession, so that no default, fraud or failure should happen or be occasioned by neglect or failure on his part to perform his duties as said teller. Under the appointment for which this bond was given, Atherton entered on the discharge of his duties as such teller on the 21st day of March, 1859, and continued to act till the 25th day of April next succeeding. The petition alleges a breach of the conditions of the bond, and states that said Atherton, while acting as teller under the appointment, abstracted and appropriated to his own use large sums of money belonging to the bank, and was a defaulter in a sum in excess of the penalty of the bond.

Atherton entered his appearance, and judgment was taken against him by default. West and Carr exhibited a release from the bank showing that they had paid two-thirds of the amount of the bond, and the suit was dismissed as to them. Armstrong alone defended, and in his answer denied that the money was abstracted or the defalcation occurred whilst Atherton was acting as teller by virtue of the last appointment ; that is, between the 21st of March and the 25th of April, and during the time that he was one of the sureties ; and averred that the money was taken and the fraud committed by Atherton when he was acting under a prior appointment, previous to the 21st of March, 1859, and before defendant was security on his official bond. For further answer, he stated that before and at the time he signed the bond sued on, the bank had in force a rule or by-law, by which it was provided that the cashier of the bank should carefully observe the conduct of all officers or persons employed under him ; that he should daily examine the settlements of the cash accounts of the bank and take charge of the same, and whenever the actual account should materially disagree with the balance of the cash account, he should report the same to the president and directors of said bank without delay ; and that it was his duty to ascertain by personal examination how the account stood, and to exercise a general and superintending

control over the individual accounts and the affairs of the bank. He also alleged that the bank had another rule or by-law in force at the time he signed the bond sued on, whereby it was provided that a committee of three directors of the bank should be appointed by the board of directors, whose duty, among other things, should be suddenly, and without previous notice, to count the teller's cash book at least once in each month and as much oftener as they might deem necessary, and to count in the same manner all the cash of said bank, at least twice in each year, without notice, and with as much variation in time of commencement as would be most likely to frustrate an attempt to conceal any abstraction of funds that might have been made; that he was induced to go security on the bond because he had knowledge of the existence of the said rules or by-laws, and with the confident expectation that they would be observed and enforced, but that the directors and officers of the bank, while Atherton acted as teller therein, wholly neglected and failed to carry the rules into effect, and failed, by committee or otherwise, to count the teller's cash book in each month, or at all, during the time that said Atherton acted as teller after the bond sued on was executed;—by which it is claimed that if any of the money or bank notes belonging to the bank were embezzled or abstracted by said Atherton such embezzlement or abstraction was the result of the neglect and carelessness of the cashier, and other officers of the bank, in failing to observe and enforce their rules and by-laws. He further alleged in his answer, that, before he signed the bond as surety, the bank, through its officers, had been informed that Atherton was suspected of having appropriated moneys to his own use belonging to the Bank of the State of Missouri, in which he had been employed as teller or bookkeeper; that the defendant did not know and was not informed by any of the officers of the bank, or in any other way, that Atherton had been so suspected; that if he had known, or had any suggestion or intimation of the fact, he would not have become security in the bond, and he claimed

that by the concealment of the fact by the directors and officers of the bank the bond was, as to him, void.

On motion, the court struck out all that part of the answer which related to the non-observance by the bank of its rules and by-laws, and also which set up as a defence the concealment by the officers of the bank that Atherton had been suspected of appropriating to his own private use money belonging to the Bank of the State of Missouri.

The trial was before a jury, and on behalf of the defence Armstrong offered to prove by Atherton that the embezzlement or abstraction of the money took place whilst he was acting as teller under a previous appointment and before the giving of the bond on which Armstrong was security. The evidence was rejected by the court on the ground that Atherton was a co-defendant and therefore incompetent. The jury rendered a verdict in favor of the plaintiff for $6,666.66, being one-third of the amount of the penalty of the bond on which judgment was entered. It is now insisted that the court erred in striking out part of the defendant's answer; that the release of West and Carr, the co-securities, discharged the defendant from all liability on the bond; that Atherton was a competent witness, and that improper and conflicting instructions were given.

We cannot accede to the first proposition of the counsel for the defendant, that he is exonerated by reason of the negligence of the cashier and directors of the bank in failing to make frequent examinations of the affairs of the bank, to count the money, inspect the books, and generally to watch over its concerns. Their duties were, perhaps, not as diligently performed as they ought to have been, but the rules and by-laws were simply directory. They were intended to prescribe the duties of the cashier and directors, and a faithful compliance with them would no doubt result indirectly in favor of the sureties, by tending to an early and speedy disclosure of fraud; yet a failure to comply with them cannot be held as a precedent condition to the sureties' liability.

The principle contended for would have the effect to de-

prive a corporation of all remedy against one agent on ac-
count of the negligence or default of another. The cashier
might excuse himself by pleading the failure of the directors
to perform their duty, and the directors would excuse them-
selves by showing that the cashier had been guilty of neglect
and omitted to execute the trust devolved upon him. The
case of the People v. Jansen, 7 Johns, 332, seems to counte-
nance the idea contended for, but the case was an innovation
on the common law rule, and has not been favorably regard-
ed. It has not been followed in the State of New York and
must now be considered as overruled—The People v. Berner,
13 Johns, 383 ; People v. Russell, 4 Wend. 570 ; U. S. v.
Kirkpatrick, 9 Wheat. 720 ; U. S. v. Van Zant, 11 Wheat.
124 ; Minor v. Mechanics' Bank, 1 Pet. 46 ; State Bank v.
Locke, 4 Den. 548 ; Amherst Bank v. Root, 2 Metc. 522.

Provisions by law that agents shall account and honestly
and faithfully perform their duties, or bonds taken by cor-
porations for the same purpose, are made by the government
or by corporations for their own security ; but they consti-
tute no part of the contract with the surety, nor can he take
advantage of a neglect or a breach committed by others.

The release by the bank of West and Carr did not dis-
charge Armstrong from his obligation on the bond. The
two former had paid two-thirds of the debt, the amount for
which they were liable, and their release did not enure to
the exoneration of Armstrong from liability.—R. C. 1855,
p. 873, § 14 ; Dodd v. Winn, 27 Mo. 501. Nor do we think
that the omission of the bank, through its officers, to inform
Armstrong that Atherton had been suspected of abstracting
or appropriating money while connected with the Bank of
the State of Missouri, constituted any defence.

It is not pretended that the imputation amounted to any-
thing more than a bare suspicion, perhaps an idle rumor,
destitute of tangibility or substance, and we cannot perceive
that any moral or equitable obligation rested on the bank to
make the disclosure. Had the charge assumed positive
criminal form and shape, and had it been fraudulently con-

cealed to obtain the defendant's signature of suretiship, the case might be very different. But there is no such allegation.

· The question of the competency of Atherton's evidence is next to be determined. The constant tendency of legislation has been to alter the rules of evidence so as to modify or abolish the many grounds that existed at common law to render witnesses incompetent to testify in many cases and for many reasons, till, at last, nearly all the barriers are thrown down. The act of 1855 destroyed the disability on account of interest, but still disqualified parties to the record. By the bill supplementary to the act concerning witnesses, approved December 1, 1855, (Sess. Acts 1857, p. 181,) it is provided that a party may be examined as a witness in behalf of his co-plaintiff, or of a co-defendant, as to any matter in which he is not jointly interested, or liable with such co-plaintiff or co-defendant, and as to which a separate and not joint verdict or judgment can be rendered. The construction of this act has been several times before this court, but the best considered and most satisfactory case that we have found is Robertson v. Findley, 31 Mo. 384. That was a case very similar to this ; the principal and security were jointly sued on the bond ; the principal failed to answer and let judgment go by default, and the security offered him as a witness in his behalf to prove a fact which tended to release him from liability. The court held him a competent witness, and said that the defence relied on by the security concerned him alone, went to his personal discharge, and was one in which his co-defendant was not jointly interested or liable with him.

The matter set up, if sustained, would not affect the liability of the principal ; the transaction, as to him, would remain unimpeached, and his obligation would remain in full force. Atherton's liability was admitted on the record, judgment had gone against him by default, and, so far as he was concerned, the transaction was past and completed. Whatever might be the liability of Armstrong, Atherton could not

be affected. Armstrong's complete or partial release from the non-payment of the debt would not operate to discharge him. It is a case in which a several or separate judgment can be rendered, for which reason Atherton is a competent witness.

The second instruction given for the plaintiff asserts, in substance, that if between the 21st day of March, 1859, and the 25th day of April thereafter, and while Atherton was teller of the Southern Bank of St. Louis, he, as such teller, received on deposit in said bank from various parties, mentioned in the petition, sums of money; such sums of money, from the time the same wewe received on deposit by him as such teller became the money and property of the bank, and he and his securities on his bond under the bond were bound to the extent of the penalty of the bond for a proper use and application of the money ; and that although the defendant Atherton, before the 21st day of March, 1859, and before the execution and delivery of the bond sued on, had, under a former appointment and bond as teller for the said bank, committed frauds on the bank and secretly become a defaulter, and was so at the time of the execution and delivery of the bond sued on, yet that, if after the said 21st day of March, 1859, and while Atherton was still teller for the bank, he withheld from entry on the books of the bank divers sums of money received by him and deposited in the bank as such teller, and withdrew the said sums of money so deposited, and secretly applied the same to conceal his previous defalcations, such conduct was a fraud within the conditions of the bond sued on, and Atherton and his sureties were liable for the same, not exceeding the penalty of the bond.

The last instruction given for the defendant was, substantially, that if, from the manner in which the business and accounts of the bank was conducted, the precise amount of the defalcations, if there was any at all, during the period of Armstrong's liability from the 21st of March to the 25th of April, 1859, was impossible to be ascertained, the defend-

ant Armstrong should not be prejudiced thereby, and that unless the plaintiff could satisfy the jury by the evidence that Atherton appropriated to his own use money of the depositors or belonging to the bank after Armstrong became security and the amount so appropriated, the jury should find for the defendant; and that, if the money deposited in the bank after the 21st day of March, 1859, as shown by the pass-book of the depositors read in evidence, was applied by Atherton to the payment of checks, or otherwise employed in the liquidation of the business of the bank and not entered on the cash books, for the purpose of concealing prior defalcations or embezzlements, the defendant Armstrong was not responsible for such moneys, but the securities on the prior bond.

We shall not comment on the evidence as to whether the facts show that Atherton, after the 21st day of March, 1859, from which time he was acting under the last appointment, actually abstracted and appropriated any of the money to his own use, or whether his delinquencies consisted in using the money so deposited for the purpose of concealing prior defalcations and embezzlements, though the case was argued at the bar, by the counsel on each side, solely on the latter hypothesis. Where an officer proves a defaulter, and has held the office under different appointments with several sets of sureties, it must now be conceded by established precedent that the sureties will be responsible who were on the bond at the time the defalcation occurred—Draffin v. Boonville, 8 Mo. 395; Todd v. Boone County, id. 431; State v. Smith, 26 Mo. 226; Smith v. Paul's exec'rs, 21 Mo. 51; Drury v. Drury, 36 Mo. 281.

The law, as laid down by the above authorities, was given by the court, but there is a direct inconsistency and conflict between the two instructions which we have referred to. One must be wrong; they cannot both be right, and it is impossible to tell on which the jury predicated their verdict. There may be different hypotheses of fact, but there can be but one theory of law. The instruction for the plaintiff tells

the jury that if Atherton, while acting as teller under a previous appointment, secretly became a defaulter, and was so when he was subsequently appointed, and, after entering on the discharge of his duties under his last appointment, he withheld from entry money received by him and deposited in the bank, and secretly applied the same to conceal his previous defalcations, such conduct was a fraud within the meaning of the conditions of the bond, and rendered the securities on the last bond liable for the full amount of the penalty. In other words, that the previous fraud or crime attached to the last transaction and transferred the responsibility to the last sureties, regardless of whether the bank was *damnified* by the act of the teller or not. The bond was conditioned for the integrity and faithful performance of his duties by Atherton, and any acts on his part in violation of these conditions unquestionably amounted to a technical breach, but the damages arising thereon would be the sum or amount lost to the bank in consequence of the breach. If he failed or neglected to honestly perform the duties of his office, yet no loss resulted to the bank, the damages could be only nominal. If he merely made a misapplication of the money in the bank to the wrong account, but did not abstract or appropriate it, we do not see that the bank was the loser by it. If the evidence shows that all the money was taken from the bank and used while he was acting under another bond, the sureties on that bond will be alone liable.

The counsel for the plaintiff, to sustain the instructions of the court below, principally rely upon the case of Ingraham v. Maine Bank, 13 Mass. 208. It appears in that case that one Hale was reappointed cashier of the bank, but before such reappointment he had been guilty of frauds on the bank, and afterwards, previous to an examination by the directors into the state of their cash, he borrowed money as such cashier from other banks, giving the checks of the bank for the same and placed it in the vault to conceal prior defalcations, and after the examination he took out the money

and returned it to the parties from whom he borrowed it. The court held, that when Hale borrowed the money as cashier and placed it in the vault, it was the money of the bank; and when he took it out and repaid it to those of whom he borrowed it, it was an abstraction and appropriation, and could not be distinguished from an actual payment from his own funds to supply the defalcation; and his surety on the last bond was held liable. But in that case it will be observed there was an *actual* taking away of the money without authority.

There has been another point made here about the admissibility of certain evidence that was received on the trial, but we have seen nothing objectionable in the action of the court in admitting evidence.

For the giving of wrongful and conflicting instructions, and refusing to permit Atherton to testify, the judgment will be reversed and the case remanded. The other judges concur.