DOROTHEA WOLFF, Respondent, *v.* NICHOLAS SCHAEFFER, Appellant.

### July 9, 1877.

1. The fact that an equitable defence is interposed in an action at law does not make it a proceeding in equity.

2. The interposition of an equitable defence in an action by *scire facias* against a surety on an administrator's bond, to enforce a judgment against his principal, does not warrant the trial court in refusing the parties a jury to try issues of fact.

3. The surety upon an additional bond of an administrator is liable for the amount of an order of distribution from which there has been no appeal, where the administrator has refused to comply with the order.

4. The surety on an administrator's bond is concluded by, and cannot attack collaterally, a final settlement from which there has been no appeal.

5. The fact that one who signed an administrator's bond as surety was informed at the time by his principal that the bond would be signed by another responsible surety will not release him.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

GEORGE A. MADILL, for appellant: A proceeding by *scire facias* to enforce against the surety on a bond a judgment against the principal is an action at law. — *Milsap v. Wildman*, 5 Mo. 428; *Humphrey v. Lundy*, 37 Mo. 323; *Bently v. Levier*, 1 Hempst. 249; Kelly on Scire Facias, 304, 378; *The State v. Randolph*, 22 Mo. 474, 483. And where issues of fact are raised therein, the parties have a

right of trial by jury.— *Bank of Missouri* v. *Anderson*, 1 Mo. 244; *Vaughan* v. *Scade*, 30 Mo. 600; *Brown* v. *Railway Co.*, 37 Mo. 299; *The State, etc.*, v. *Paul*, 21 Mo. 51; Wag. Stat. 104, sec. 21. The notes of an insolvent administrator, inventoried as assets in his hands, are as the notes of any other insolvent maker. The final settlement did not conclude the sureties. — *McCarty* v. *Frazier*, 62 Mo. 263.

KEHR & TITMANN, for respondent: The liability of a surety on a bond is not affected by the fact that at the time he signed the bond he was told that another would also sign it. — *Moore* v. *Sandusky*, 46 Mo. 380; *Cutter* v. *Whittemore*, 10 Mass. 442; *Pawling et al.* v. *The United States*, 4 Cranch, 220; *The State* v. *Peck*, 53 Me.; *The State* v. *Potter*, 63 Mo. 212; *The State* v. *Baker*, 4 Cent. L. J. 389. The surety was concluded by the final settlement. — *The State* v. *Holt*, 27 Mo. 340; *Taylor* v. *Hunt's Executor*, 34 Mo. 205; *The State* v. *Drury*, 36 Mo. 281; *The State* v. *Fields*, 52 Mo. 474; *McCartney* v. *Garneau*, — Mo. App. — ; *The State ex rel.* v. *Rucker*, 59 Mo. 17. The assets with which the administrator stood chargeable at the date of the second bond are secured by it. —*Pinkstaff* v. *The People*, 59 Ill. 148; *Ennis* v. *Smith*, 14 How. 416. The defence being equitable, the court committed no error in discharging the jury. — *Weil* v. *Kume*, 49 Mo. 158; *Freeman* v. *Wilkerson*, 50 Mo. 554; *Stillwell* v. *Kellogg*, 14 Wis. 461; *Connecticut Ins. Co.* v. *Cross*, 18 Wis. 109; *Sands* v. *Kimback*, 27 N. Y. 147; *Sheppard* v. *Steele*, 43 N. Y. 52; *Woodward* v. *May*, 4 How. (Miss.) 395; *Wells* v. *Caldwell*, 1 A. K. Marsh. 441; *Creighton* v. *Johnson*, 6 Litt. 240, 241; *McCord* v. *Johnson*, 5 Bibb, 431.

BAKEWELL, J., delivered the opinion of the court.

This was a proceeding on *scire facias* against appellant, a surety on the bond of Christian Staehlin as executor of Louis Wolff, who was at the time of his death the husband

of respondent. Judgment was rendered in the Probate Court for $32,038.32; and, on appeal, and trial anew in the Circuit Court, there was judgment for $27,706, from which defendant appeals.

It appears that Wolff died in 1872, leaving a large estate, consisting of real estate, notes, and cash. His widow was the principal beneficiary under the will. Amongst other assets were two notes of Staehlin, the executor, inventoried at $4,932. Staehlin qualified as executor in August, 1872, and his sureties were Finn, Saler, and Berning. The penalty of this bond was $60,000. The two first-named sureties became insolvent, and, on application of the widow, Staehlin was ordered to give a new bond for $60,000 on or before September 27, 1873. Staehlin applied to defendant, telling him that John Clemans, J. D. Decker, and H. B. Berning, a man reputed to be rich, would be co-sureties with him on the bond; that they had promised to go on the bond. The appellant went to the Probate Court on the last day for executing the bond, and signed it. At that time no names were in the body of the bond, or signed to it. Schaeffer's name was inserted when he signed. When Schaeffer was examined as to his sufficiency, the probate judge was informed, in Schaeffer's presence, that Berning was to execute the bond; upon which the judge remarked that the bond was good enough as it stood, with Schaeffer. The appellant left, satisfied that Berning was also to execute the bond. Berning, however, was not found at home; and the bond was filed, on September 27th, without his name. He afterwards called at the clerk's office of the Probate Court to fulfil his promise, but found the bond already approved, and left without executing it.

At the time of filing the second bond the executor was insolvent. On March 14, 1874, six months before the second bond was filed, an order was made directing the executor to pay to respondent $5,000. The agent of respondent called on appellant, and told him that he would get out an

execution against him unless he paid the money required by this order.  Thereupon appellant paid $5,000 to the agent, who turned it over to respondent. ‘ Of this Staehlin knew nothing ; and he made his final settlement in January, 1875, without taking any credit for this payment.  This settlement was made a few days after the final discharge of Staehlin in bankruptcy.  The item of $30,806 cash, found due on final settlement, was composed partly of the notes of the executor, before mentioned, for $4,832, and partly, also, of other notes which he had sold or otherwise converted to his own use.  The agent of respondent, before applying for a *scire facias*, demanded of Staehlin the whole balance shown by the settlement to be due, though he well knew that $5,000 of the amount had been paid to him on account of the respondent, without the knowledge of the executor, before the settlement was made ; and this proceeding was commenced for the balance appearing due by the settlement.  It is, however, manifest from the amount of the judgment that the Circuit Court took this payment into consideration, and allowed it to the respondent in its finding.  Execution against Staehlin was returned *nulla bona*, on April 12, 1875.

Appellant offered to show that the notes which constituted the larger part of the cash balance had been converted to his own use by the executor, and were no longer in his hands when the second bond was executed ; that the executor was insolvent at the date of the second bond ; and that none of the personal property, except the executor's own notes, was then in the executor's hands.  This testimony was excluded by the court.

When the cause was called, a jury was empanelled in the Circuit Court without objection ; and the trial progressed before the jury, until all the testimony was in and instructions prayed, when the court, of its own motion and against the objections of both parties, discharged the jury, took the cause as submitted, and rendered a decree for

plaintiff. This was done on the theory that defendant had raised an equitable defence; that testimony had been admitted under that defence; and that, therefore, the cause was not one in which instructions should be given, or that should be tried by a jury.

The Practice Act provides (Wag. Stat. 1040, sec. 12) that "issues of fact, in an action for recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered." The statute of administration provides (Wag. Stat. 109, secs. 13–15) that, when execution against an executor is returned unsatisfied, the creditor may sue out scire facias against one or more of the sureties, requiring him or them to show cause why judgment should not be rendered against him or them for the amount ordered to be paid; and still unsatisfied and that, if good cause to the contrary be not shown, judgment shall be rendered, etc.

The proceeding by scire facias was a well-known common-law action, in which the course of proceedings, after the delivery of the declaration to issue, trial, and judgment, was substantially the same as in any other action. It was and is, however, a settled rule that the defendant in scire facias shall never be allowed to plead any matter which he had opportunity of pleading in the original action; since the object of the proceeding was to give defendant the means of showing, if he can, that some matter has occurred, since judgment, which entitles him to resist the execution. In scire facias sur bond, as is the case before us, there may be, of course, additional defences as to the execution of the bond. When this writ was issued by a chancellor, if, in proceeding with the trial, any question of fact arose, the practice was to deliver the case into the Court of King's Bench, to be proceeded with before a jury. Whilst we have no special statute regulating the practice in cases of scire facias, the proceeding is frequently referred to in the General Statutes, and we know of nothing in our laws, in the decisions of our Supreme Court, in the usual course of

practice in the State, or in the nature and reason of the case, which leads us to suppose that a proceeding to recover money by *scire facias* should not be governed by the same rule, as to the right of a jury to try any issue of fact, which applies to any other action at law. Our Supreme Court treats *scire facias* as any other suit; and the right to a jury in the proceeding seems never to be doubted. *Milsap* v. *Wildman*, 5 Mo. 425; *Brown* v. *Railway Co.*, 37 Mo. 299; *Humphreys* v. *Lundy*, 37 Mo. 323.

This proceeding, then, is an action at law; and the fact that an equitable defence is interposed in an action at law does not make it a proceeding in equity. The allegations contained in the writ in this case were traversed, as to some of them, by the proofs offered on the trial, no pleadings being required or allowed. These issues were tried. The execution and delivery of the bond was denied; the liability of respondent for any waste by the executor before the date of the second bond was denied; the claim that the amount of the judgment against the executor was wholly unpaid was denied; the fact that the executor was induced by the fraud of plaintiff or her agent, in ignorance of a material fact known to both of them, to make a false settlement charging himself with $5,000 which he did not owe to the estate was set up as an equitable defence. The court very properly judged that it would be iniquitous to allow respondent to recover money from the surety which he had paid to her before the suit was commenced; but it erred in supposing that the existence of this equitable defence turned this action at law into a proceeding in equity, or deprived appellant of his right to have questions of fact arising in the case passed upon by a jury, and to have the questions of law passed upon by the court, in the form of written instructions. As the cause must be sent back for a new trial for the error committed in refusing to appellant a jury, it may be well to consider some other questions arising upon the record.

Is Schaeffer, a surety upon the second bond, liable for

losses to the estate which accrued before that bond was exe-
cuted? It is, we presume, upon the theory that the surety
upon the second ·bond is thus liable that all testimony as
to the condition of the assets at the date of this second
bond was excluded.

The additional bond is a complete discharge to the former
sureties from any liability after that date; but is no dis-
charge for any liability for misconduct of the executor prior
to that time. Wag. Stat. 76, sec. 39. It seems to be
taken for granted that waste of a minor's estate will make
the surety liable only from the date of.his bond. *The State
v. Paul,* 21 Mo. 51. The condition of the bond of a cura-
tor is, however, " that he will faithfully discharge his duties
according to law," whilst that of an administrator is that
he " shall faithfully administer the estate, account for, pay,
and deliver all money and property of said estate, and per-
form all other things touching said administration required
by law, or the order or decree of any court having juris-
diction." Wag. Stat. 65, sec. 12; *ibid.* 73, sec. 18. The
surety is bound, by the terms of this condition, only for the
future acts or omissions of his principal. He binds himself
that the executor will faithfully administer the estate, not
that he has done so; but he also binds himself that the
administrator will account for pay, and deliver all money
and property of the estate; and, if this is not done, it may
be said that the surety is liable, whether the property was
wasted before he gave the bond or not; that if the waste
was already committed, he binds himself that it will be
made good. These, it may be argued, are the express terms
of the contract; and though it be true that if the condi-
tions of a bond, or the terms regulating its scope, do not
make it retrospective, then the sureties cannot be held
liable for previous losses, yet that this bond is made retro-
spective in its terms so far as this, that if there be a future
default in the payment of money, an enquiry cannot be made
in a suit against the surety as to whether or not the default

originated in some misconduct of the administrator before the bond sued for was given. The surety not only binds himself that the administrator will faithfully discharge his duty as administrator, but also, expressly, that he will pay over what shall be found due on final settlement. If this is the only interpretation which can be placed upon the language of the bond, then, though it may seem hard that the new bondsmen should thus be loaded with liability for the whole estate, yet it is a burden which they voluntarily assume.

It is contended that this cannot be the meaning of the law, since the statute expressly provides that the old sureties are not released for past liability; and, inasmuch as there can be no contribution exacted from them in case of a recovery of the whole defalcation from the sureties on the bond, this would work their entire release. The distributee of the estate, it is said, could not enforce payment from them if she recover in this action, for she is already paid; and the appellant could recover nothing against them, because there is no privity of contract between him and them. The want of privity of contract is not decisive of the question of the right of an additional surety to contribution, and it is by no means clear that a surety on the second bond could not enforce contribution from the sureties on the first for waste already committed when the second bond was executed, especially where the law which provides for the second bond declares that the liability already accrued on the first shall not thereby be discharged. It is not necessary, to create the relation of co-surety, that those standing in that relation should have become bound for the principal debtor by the same instrument or at the same time, if it is the same transaction, and they have a common interest, or a common burden to bear. *Deering* v. *Winchelsea*, 2 Bos. & Pul. 270. The reason is that the right to contribution is founded, not on contract, as counsel for appellant assumes, but arises from equitable considerations

growing out of the relation of suretyship, where the sureties have not by contract stipulated for the measure of the obligation that shall exist between them as to contribution. See the observations of Lord Eldon in *Coope* v. *Twynam*, Turn. & R. 426, and in *Craythorne* v. *Swinburne*, 14 Ves. jr. 161. The question here would be, then, Are these parties sureties in the same transaction? And it would seem that, as to the waste of the estate by their principal before the date of the second bond, they are. The failure to pay over, for which the surety on the second bond is liable, may be shown to arise from the fact that a part of, or perhaps all, the moneys of the estate were converted to his own use and dissipated during the period covered by the first bond; and thus both sets of sureties are really liable for one and the same breach of duty on the part of the same executor of the same estate. But, putting these considerations aside, the surety plainly binds himself by this bond that his principal shall perform all things touching said administration required by the order or decree of any court having jurisdiction. By the order of the Probate Court, the administrator is required to pay the amount sued for in this action; that order is the order of a court of competent jurisdiction; it remains in force, and no appeal has been taken from it; for the breach of the bond in refusing to obey that order, it would seem that the surety is liable.

It is contended by appellant that the discharge of Staehlin in bankruptcy relieved the executor from the payment of his own notes, which he inventoried as assets, and with which he charged himself as cash in his final settlement. These notes, appellant contends, were as the notes of any other insolvent maker (62 Mo. 263); and the settlement in the Probate Court did not, he maintains, conclude the sureties on this question.

The appellant is concluded by the judgment in the Probate Court so far as this, that he cannot attack it, except in

a direct proceeding for fraud.   As surety, he had the right of appeal.   *McCartney* v. *Garneau*, Mo. App.

The fact that Schaeffer was informed by those interested in procuring his signature to the bond that it would also be signed by another responsible surety will not release him.   It does not appear that Schaeffer delivered the bond merely as an escrow, that it was fraudulently delivered without his consent, or that there was any positive agreement or condition that it should not be delivered as his deed until also signed by Berning.   Indeed, at the time that the bond was signed by Schaeffer, Berning's name nowhere appeared in the instrument as co-obligor.   Under the recent decisions of the Supreme Court in *The State* v. *Potter*, 63 Mo. 212, and *The State* v. *Baker*, 4 Cent. L. J. 389, it must be held that there was no evidence to sustain the defence that the bond was not executed nor delivered by appellant.

So far as the record shows, the order of distribution in the Probate Court, by which Staehlin was directed to pay over to plaintiff the balance shown by his settlement to be due the estate, was not offered in evidence ; neither is the petition for a *scire facias* set out.   It is true that the execution, which recites the order of distribution, is in evidence, and the writ in evidence refers to the petition.   But the order of distribution was an essential element to the case of plaintiff, and we do not think that its existence can be presumed, in a case of this kind, from its recital in an execution from a Probate Court.

It is apparent, however, that this judgment must be reversed for the error committed in depriving appellant of the mode of trial which, under the Constitution, he had a right to demand.   The judgment of the Circuit Court is, therefore, reversed, and the cause remanded.   All the judges concur.