JAMES A. SMITH ET AL., Appellants, v. ST. LOUIS BEEF CANNING COMPANY, Respondent.

January 2, 1884.

1. ACTIONS — JURY — PRACTICE. — The test of a right of trial by jury is the action and not the defence or the issues.

2. ——— EQUITY. — The interposition of an equitable defence to an action for a breach of contract does not deprive the plaintiff of his right of trial by jury.

3. ——— CASE CONSIDERED. — The case of *Weil* v. *Kume* (49 Mo. 148), considered and held to be in disaccord with the earlier and more recent decisions on the question of the right of trial by jury.

4. ——— MISTAKE — CONTRACTS — REFORMATION OF. — A writing, a mistake in the drafting of which makes it express an undertaking other than that agreed upon, may, on proper application, be reformed so as to express the true agreement.

APPEAL from the St. Louis Circuit Court, THAYER, J *Reversed and remanded.*

KLEIN & FISSE, for the appellants : The plaintiffs were entitled to a trial by jury, and the court erred in denying a jury trial. — *Davis* v. *Morris*, 36 N. Y. 569; *Ragan* v. *McCoy*, 29 Mo. 356; *The State ex rel.* v. *Meagher*, 44 Mo. 356; *Peacock* v. *Nelson*, 50 Mo. 256; *Kitchen* v. *Railroad Co.*, 59 Mo. 514; *Wolff* v. *Schaffer*, 4 Mo. App. 367; *Pitcher* v. *Hennessey*, 48 N. Y. 415. Upon the case made by the evidence, the so-called " decree " or the judgment rendered by the circuit court, is clearly against right and justice, and is also against the law governing such matters. — Kerr on Fraud and Mistake (Bump's ed.), 409, note, 421, 436; *Mead* v. *Insurance Co.*, 64 N. Y. 455; *De Jarnett* v. *Cooper* (Cal. S. Court), 13 Cent. L. J., 251; *Allen* v. *Carter*, 8 Mo. App. 485; *Botsford* v. *McLean*, 42 Barb. 445; *Macalpine* v. *Swift*, 1 Ball. & B. 285, 293; *Diman* v. *Railroad Co.*, 5 R. I. 130.

NOBLE & ORRICK, for the respondent: The cause was triable before the court, without the intervention of a jury, because of the equitable defence or cross-bill. —*Free-man* v. *Wilkerson*, 50 Mo. 554. When an instrument is drawn and executed which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement. — *Hunt* v. *Rousmaniere*, 1 Pet. 13; *Cassidy* v. *Metcalf*, 66 Mo. 528, 529; *Leitendorfer* v. *Delphy*, 15 Mo. 160; 1 Story's Eq. Jur., sect. 152; *Reed* v. *Root* (Iowa), N. W. Rep. 323. The mistake must be mutual and clearly proved. — *Mead* v. *Insurance Co.*, 64 N. Y. 455; 1 Story's Eq. Jur., sect. 157.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs claim damages in the sum of $24,750 for the breach of a contract whereby the defendant corporation was to purchase and receive from them 8,000. tons of ice during the months of April, May, June, July, and August, 1880, at prices agreed upon. The petition alleges that the plaintiffs had delivered about 3,000 tons, when, in July, 1880, the defendant would not permit them to deliver any more. The answer denies generally, and adds, by way of equitable defence, that the contract, as set forth in the petition, is not the contract which the parties, or either of them, agreed upon; but that by mistake of the person who undertook to state their agreement in writing, the understood terms were not truly expressed, and terms were made to appear in the writing, which were not intended by either party. The brief of counsel for the plaintiffs presents the two forms of

contract, as averred and disputed, in parallel columns, thus: —

"EXHIBIT A" — THE CONTRACT AS EXECUTED.

ST. LOUIS, Mo., April 27, 1880.

*The St. Louis Beef Canning Co.:*

GENTLEMEN — We agree to deliver, free of charges, in cars on your tracks at the National Stock Yards, Illinois, eight thousand tons of prime, merchantable ice during the months of April, May, June, July, and August, 1880, at the following prices, viz.: —

For the month of April, $6.00 per ton — 2,000 pounds.

For the month of May, $6.65 per ton — 2,000 pounds.

For the month of June, $7.00 per ton — 2,000 pounds.

For the month of July, $7.00 per ton — 2,000 pounds.

For the month of August, $7.00 per ton — 2,000 pounds.

Very truly yours,

JAS. A. SMITH & SON.

Accepted April 27, 1880, it being understood that the company use no ice purchased of other parties during the above period until the eight thousand tons are exhausted, provided Messrs. J. A. Smith & Sons make no default in deliveries.

THE ST. LOUIS BEEF CANNING CO.

By A. S. PATTERSON, *Secretary.*

DEFENDANT'S VERSION OF CONTRACT.

ST. LOUIS, Mo., April 27, 1880.

*St. Louis Beef Canning Co.:*

GENTLEMEN — We agree to deliver, free of charges, in cars on your tracks at the National Stock Yards, Illinois, such an amount of ice as you may want during the months of April, May, June, July, and August, 1880, not exceeding in all 8,000 tons of prime, merchantable ice with the privilege on your part of taking any portion of said amount during either of said months; and for such amounts thereof as you shall accept you are to pay the following prices per ton on deliveries made during the respective months as follows: —

In the month of April, $6.00 per ton of 2,000 pounds.

In the month of May, $6.65 per ton of 2,000 pounds.

In the month of June, $7.00 per ton of 2,000 pounds.

In the month of July, $7.00 per ton of 2,000 pounds.

In the month of August, $7.00 per ton of 2,000 pounds.

Very truly yours,

JAS. A. SMITH & SONS.

Accepted April 27, 1880, it being understood that the company use no ice purchased of other parties during the above period until the 8,000 tons are exhausted, provided Messrs. J. A. Smith & Sons make no default in delivery.

ST. LOUIS BEEF CANNING CO.

By A. S. PATTERSON, *Secretary.*

The defendant prayed that the contract be reformed in conformity with the understanding of the parties, as stated. The plaintiffs replied, denying the allegations of new matter in the answer.

When the cause was called for trial, the court denied the plaintiffs' application for a jury, and required the plaintiffs, against their objections, to assume in the outset the burden of proof on the question of damages sustained. Exceptions to those rulings were duly saved. The court heard the testimony, and rendered a final decree for the defendant.

A glance at the terms of the contract, as stated by the defendant, will suffice to prove that, if such was the real agreement between the parties, there is no ground for any recovery by the plaintiffs. The defendant, in that case, had a right to stop the delivery at pleasure. The whole controversy is thus made to turn upon the truth of the equitable defence. If that defence be maintained, there can be no propriety in inquiring about the plaintiffs' damages. If, in this state of affairs, we must adopt the language, as well as the effect, of the decision in *Freeman* v. *Wilkerson* (50 Mo. 554), " the answer of defendant converted this case into an equitable proceeding." Counsel protest vigorously and ably against the recognition of such a transformation. To admit it, is to revive the obsolete distinctions between forms of action, in defiance of codified reform, whose very root and life-giver consists of the declaration that, " There shall be in this State but one form of action for the enforcement or protection of private rights, and redress or prevention of private wrongs, which shall be denominated a civil action." Rev. Stats., sect. 3461.

We do not think that, in the language quoted, or in any elsewhere, our supreme court has ever intended to say that there are now, in Missouri, suits at law and suits in equity, as distinct and differing forms of action, or that one such form may be converted into the other. It is intended only to distinguish between the various sorts of

rights which the court may find itself called upon to adjudicate. The pleadings may develope a case in which the right to be enforced is one of easy recognition by the principles of equity, but which the common-law rules ignore, and *vice versa*. The form of action is always the same. But the methods to be employed for reaching the conclusions of justice between the parties may vary, as the right belongs to the one class or the other. Thus, in the case of common-law rights to be adjudicated, the trial by jury is generally, if not always, appropriate, and its natural concomitant, the giving of instructions or declarations of law, attaches as well, when the trial is by the judge, sitting as a jury. But, when employed in the investigation of equitable rights, the court may, or may not, have the aid of a jury according to circumstances. If the equitable case be one not proper for a jury trial, or, if no jury be demanded, and the parties submit the controversy to the judge, who will then be sitting·as a chancellor, instructions or declarations of law will not be proper, and, if given, will not be reviewable on appeal. The last mentioned alternative expresses the precise condition in *Freeman* v. *Wilkerson* (50 Mo. 554), and the conclusion there followed, as we have stated it. This is all that the case decides.

We take the decision, as it is uttered, and can find no authority for extending it over another field, and making it applicable to the right of trial by jury, which was not before the court.

The truth is, in the present state of our law, as we understand it, the right of trial by jury is only remotely related to the distinction between legal and equitable rights, and is never made wholly dependent upon it; unless, perhaps, where the plaintiff's petition asks exclusively for equitable relief, which can not be given in a judgment for money, or for specific real or personal property. Our present statute on the subject is so plain and unequivocal, that its interpretation needs not the least aid from the ancient distinctions

between forms of action, or the origin and development of the trial by jury. "An issue of fact in an action for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived or a reference ordered, as hereinafter provided." Rev. Stats. sect. 3600. The word action does not mean the defence set up, nor the issue developed in a cause. It means, according to the books, " the legal demand of one's just rights," in other words, the plaintiff's suit. The law might seem more symmetrical, if the practical test were adapted to the issue, or to the right in controversy, however developed by the pleadings. But the language used must be construed to one obvious effect, to wit, that, if a plaintiff comes into court demanding a sum of money, or specific real or personal property, he is entitled to have a jury pass upon the facts which affirm or deny his right, whatever form of resistance may be offered by the adversary.

In the decisions of the supreme court, and of this court, we find nothing that casts a doubt upon the correctness of this conclusion. In each of the next following cases the plaintiff asked for a money judgment, and was met by an equitable defence. It was held that a trial by jury was the proper method. *State ex rel.* v. *Meagher*, 44 Mo. 356; *Peacock* v. *Nelson*, 50 Mo. 256; *Kitchen* v. *Railroad Co.*, 59 Mo. 514; *Wolff* v. *Schaeffer*, 4 Mo. App. 367. In the first mentioned case, Currier, J., remarks that, " The change of system, in this instance, leads to a change of the trier of the questions of fact involved, substituting a jury in place of a chancellor." *Weil* v. *Kume* (49 Mo. 158), is the only case that we find in Missouri, wherein an action for the recovery of money is held as proper for the exclusion of a jury, on the ground that the petition was in the nature of a bill in equity. Its authority is completely annulled by both the earlier and later decisions of the same court, and its conclusion is in manifest conflict with the terms of the

statute, which must have been overlooked. *Ragan* v. *McCoy* (29 Mo. 356), was an action upon a money demand, in which the plaintiffs prayed also for a discovery. It was held that the whole case should have been left to a jury, notwithstanding the prayer for equitable aid.

The New York statute, in the particular we are considering, is identical with ours. It seems to be well understood in that state, that the test whereby the question of jury or no jury must be determined, is the action, and not the issue. 2 Nash. Pl. & Pr. 961.; *Davis* v. *Morris*, 36 N. Y. 569; *Pitcher* v. *Hennessey*, 48 N. Y. 415; *Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283.

We are of the opinion, therefore, that the court erred, in the present case, is refusing a trial by jury, upon the plaintiffs' demand.

It is argued for the plaintiffs that the court erred further in sustaining the equitable defence, because no proper case was presented for the relief granted, and no compensation was provided for the party against whom the decree was rendered. There is nothing in this point. It is, of course, necessary to the reformation of a contract, on the ground of mistake, that the correction sought shall make it conform to the original, or rather, the final intention of both parties, at the time of their agreement. But this is no more than the defendant claims.

The defence is, that both parties agreed upon a certain contract, and that the mistake consisted in making the writing show a different one. The correction asked for is, that the writing be now made to show what the parties in fact agreed upon. The court found the facts proved, as alleged by the defendant, and decreed accordingly. As to the matter of compensation to the losing party, the authorities cited have no application. They refer to cases where a mistake is made by one party only, and the other who has made no mistake, and has been guilty of no fraud, misrepresentation, or unfairness, must be placed as nearly as

possible in the position to which he has a right to suppose himself entitled. No such case is set up here, nor is it pretended that any such was shown in evidence.

The judgment is reversed, and the cause remanded. All the judges concur.