DRAFFEN ET AL. *vs.* CITY OF BOONVILLE.

Defendant was collector of the revenue for the city of Boonville for the year 1839 and 1840. Bonds with different sets of sureties were given for each of those years. The fiscal year commenced on the 3d of May. The register of the city kept a general account with defendant, and on the 3d of May, 1840, defendant was charged on the books of the register with a default of $1,437, and this balance was carried over to his account in 1840. The tax-books of 1840, placed in defendant's hands and charged to him, amounted to $2,631 84. During that year, defendant paid over and was credited with $3,003. Nothing was ever said as to the application of the payments, to any particular items of indebtedness, but the payments were credited to his general account. At the end of the fiscal year 1840, there was a general balance struck against defendant, of $1,070 66. The question was, whether the sureties in the bond of 1840 were liable for this balance, it not appearing from what source the moneys paid in during the fiscal year 1840 were derived.

*Held:* That where an officer is chargeable with the revenue of a specified year, it will be presumed, in the absence of all proof to the contrary, that payments made during that year are designed to extinguish the liabilities of such year. But in the absence of all proof of intention, payments made in the year 1840, before the collector was charged with the revenue of that year, must be imputed to extinguish the oldest item of indebtedness.

APPEAL from Cooper Circuit Court.

ADAMS *and* LEONARD, *for Appellants.*

1. The law of this case is properly stated in the first, second, and third instructions on the part of the defendants, which were refused by the court.—8 Wend. Rep., 403, Seymour *vs.* Vanslick; Stone *vs.* Seymour and Buck, 15 Wend. Rep., 19; 3 Johns. Digest, 451, 452; 7 Cranch's Rep., 572; same case, 2 Cond., 611; 1 How. U. S. Rep., 250, United States *vs.* Eckford's Executors.

2. In cases of bonds conditioned for the faithful discharge of duties for limited periods, the liabilities of sureties in such bonds cannot be extended beyond the period mentioned, either in its commencement or duration.—See Norris's Peak,. 414; 6 Cond. Rep., 611; 6 East.,507; 8 Mass. Rep., 276; 2 Saund. Rep., 411, 415; 2 Black. Rep., 934.

3. In this case the sureties were only liable for the collection of the revenue for the year 1840, and were in nowise bound for the defalcation of 1839, each set of sureties being entitled to the benefit of the moneys paid in during their respective suretyships.

4. The course pursued by the counsel for plaintiffs, in commenting upon and reading instructions which had been excluded from the jury, was unwarranted, and calculated to mislead the jury.

HAYDEN *and* RICHARDSON, *for Appellees.*

1. The court very properly instructed the jury as to the application of the payments made by Draffen during the fiscal year of 1842.—2 Starkie, 598, and note *g.*; 1 Starkie's Ev., 153; 9 Wheaton, 720; 5 Cond. Rep.; 2 Maule and Selwyn, 18; 2 Cond. Eng. Common Law Rep., 335; 5 Taunt., 596; 6 Taunt., 597; 6 Cranch, 320; 15 Wend., Stone *vs.* Seymour, 39–44; 11 Cond. Eng. Com. Law Rep., 35; 1 Pick., 336; 2 N. H. Rep., 196.

2. There is no error in that the demurrer to the defendant's plea of set-off was not disposed of before the trial, because there being no judgment on the demurrer, and issue being joined to the said plea, this court will presume that the demurrer was withdrawn.—Sweeney *vs.* Willing, 6 Mo. Reports, 174; Patrick *vs.* Conral, Lit. Sel. cases.

3. The Circuit Court very properly refused to arrest the judgment.—2 Mo. Rep., 137.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of debt upon the official bond of Draffen, as collector of the revenue of the city of Boonville for the fiscal year 1840.

The bill of exceptions taken on the trial preserves the testimony and instructions of the court—upon which alone any question is presented.

The plaintiffs, it seems, were a corporation chartered by act of the legislature, with authority to levy and collect taxes for the support of the city, appoint collectors, and take bonds. The defendant, Draffen, was appointed collector for the fiscal year 1840, which fiscal year commenced on the 3d of May, 1840, and terminated on the 3d May, 1841, and the bond sued on was executed by him, with Porter and Kukelham as securities. The condition of this bond was, the said Draffen, as collector of the city revenue for 1840, should well and truly discharge his duties. It also appeared, that said Draffen had been collector for the previous year, commencing on the 3d May, 1839, and ending on the 3d May, 1840, and had given bond and security for the discharge of his duties during that year.

It also appeared that the register, who kept the accounts of the city, kept a general account with Draffen, commencing with the year 1839, and that, at the close of that year, to wit, on the 3d of May, 1840, he was charged on the books of the register with a default of $1437; that this balance against him, at the close of the fiscal year 1839, was carried over to his account in 1840; that, in 1840, the tax books of the general revenue were placed in his hands, and charged to him on general account, amounting to $2631 84; that, during said year, Draffen paid over, and was credited with the sum of $3003; that nothing was said as to the application of said payments to any particular items of indebtedness, but the same was credited to him in general account, without any specific application by either party; that, in like manner, the special taxes for grading and paving Fifth-street of said city, were placed in his hands, amounting to $4888, and debited in the said general account, on which he paid $4848 during the said year 1840, which was credited to said general account; that Draffen was entitled to 2 per cent. for collecting the special tax aforesaid, which left a balance in his favor on said special tax of about $50. It also appeared, that after allowing said credit of fifty dollars, and all others credited in the fiscal year 1840, a general balance was struck against him for the sum of $1070 66.

It was also proved, that Draffen was unacquainted with the mode in which the register kept these accounts; that he made no objections, but admitted the books to be correct, and was willing to settle by them. It appeared also that the register did not know from what source the moneys paid in during the fiscal year 1840 were derived.

On this evidence the court directed the jury—

1. If they believed that the register of the city kept a running account against said Draffen, extending through the fiscal years 1839 and 1840, embracing the general and special taxes, and that, at the end of the year 1839, there remained due the city a balance, which was carried into the account current for the succeeding year; that Draffen was aware of this mode of keeping the accounts, and made no objections, and gave no directions as to any specific applications of the moneys he from time to time paid in, and that the register applied the payments to the general account, then the defendants are responsible for the default appearing at the commencement of this suit.

2. That the default of the fiscal year 1839 ought not to be charged against the defendants.

3. That although the register may have transferred the default of the officer, Draffen, for the fiscal year 1839, to the general account for 1840, yet these defendants are not accountable for that default.

4. That if Draffen made payments in 1840, and intended those payments to extinguish his liabilities for that year, then such payments must be so applied, and the intended application may be inferred from circumstances.

Under these instructions, the plaintiff had a verdict for $1003, with interest. A motion for a new trial was made and overruled, and judgment was rendered on the verdict.

The law in relation to the imputation or application of payments, in running accounts between individuals, is well settled. The debtor has a right to direct to which account the payment shall be applied, and, if he is silent, the creditor may make the application; and in the absence of any indication of the intention of the parties, the law will make the appropriation, by applying the payment to the extinguishment of the oldest item of indebtedness. A difference of opinion has, however, prevailed, in the application of this rule to cases where the rights of securities are involved. In the United States vs. Kirkpatrick, (9 Wheaton, 737,) the rule was maintained, without any reference to a change of official responsibility, though the effect of the judgment in that case was to relieve the securities, and fix the default at a period when the government was without security. In the case of the Postmaster-General vs. Farbee, (4 Mason's Reports, 335,) it was held by Judge Story, that in the absence of any distinct appropriation the rule was the same, whether the debt or a part of it was secured or not, upon the ground, that whatever would extinguish the indebtedness of the principal in the order of time, would extinguish the indebtedness of the sureties in the same order. And this view of the law is adhered to by Judge Story in the last edition of his Treatise on Equity; (1 Story's Equity, 459, g.;) and the cases of the United States vs. Kirkpatrick, Postmaster-General vs. Farbee, and United States vs. Wardwell, (5 Mason,) are cited in support of the position. But the applicability of this rule to cases where different sets of securities were concerned, was expressly denied in the case of United States vs. January and Patterson, (7 Cranch, 572,) and since the late case of United States vs. Eckford's Executors, (1 Howard, 263,) the question may be regarded as settled in the Supreme Court of the United States.

The injustice of applying an iron rule of law, established for the convenient settlement of accounts between individuals and partnerships, to similar transactions between governments and corporations and their agents, so as to impose upon the last securities the burthen of every default committed by their principal, whether during the term of their responsibility or that of their predecessors, is most obvious and apparent, and could only be tolerated because of some great principle of public policy which it may be thought to promote. If an abandonment of the rule were likely to jeopardize the public interests and lead to embarrassment, in fixing the liabilities of public officers, there would be strong inducements for its enforcement, notwithstanding it might appear harsh and inequitable in individual cases. But such results should appear inevitable to authorize a court to adopt, without qualification, a rule which works such manifest injustice. May it not be assumed, that

prompt settlements and strict accountability are more beneficial, both to the government and the agent, than the establishment of the rule in question, and that such settlements are not likely to be enforced, when it is made an object of indifference to the government, reposing with confidence on the solvency and sufficiency of existing securities, and regardless of the past?

That the sureties of the collector upon his bond are not responsible for defalcations occurring during his first term, before the commencement of their liability, is so apparent that no one denies it; but when difficulties arise in ascertaining at what period the default occurred, in the confusion of a general account running through successive terms, guaranteed by different securities, it is proposed to cut the gordian knot, by the application of a rule which works invariable injustice. We are asked to adopt a rule exactly the reverse of the general maxim, "that a public officer is presumed to do his duty," and presume him guilty of a second default in order to cure a former one.

In actions like the present, the State, county, or corporation is not exempt from the burthen imposed upon plaintiffs generally, of making out a *prima facie* case. To entitle the plaintiff to recover the amount of the defalcations during the term for which the defendants were sureties, must be shown. For this purpose, the books of the accounting officer, here called the register, are *prima facie* evidence. — United States *vs.* Eckford's Executors, 1 Howard, 263.

- The bill of exceptions in the present case does not contain the transcript from the register's office, which were offered on the trial as a statement of the accounts between Draffen and the City of Boonville. It would seem, from the terms of the bill of exceptions, that at the expiration of the fiscal year 1839 there was an admitted *default* of $1437. This was certainly evidence of such default, yet such evidence might have been rebutted. It might have appeared that this default was only nominal; that, in fact, there had been at that time no funds collected, or if collected, that they had been subsequently paid over.

We understand the case of Seymour *vs.* Van Slyck, (8 Wend., 420,) and United States *vs.* Eckford, as settling this principle. If the money collected or paid over subsequently to the period when the responsibility of the present defendants commenced, consisted of monies accruing from the revenue of 1839, and charged against the collector for that year, they are not entitled to the benefit of such payments. In the cases above-cited, the application of the principle was obvious enough, and the facts as easily ascertained. In the last-mentioned case, payments into the treasury of monies *accruing and received* in the second term, were not allowed to be applied to the extinguishment of a balance due at the end of the first term, and for the same reason, payments made in the term subsequent to the one for which the defendants were responsible, if monies received on duty, bonds, or otherwise, which remained charged to the collector as of the preceding official term, were allowed as a credit to the defendants. So, in the case Seymour *vs.* Van Slyck, the defendants were credited with monies paid subsequently to the term for which they were liable, upon their showing that such payments were of moneys received prior to the expiration of their term. In each of these cases, the

collector's books could be resorted to, for the purpose of ascertaining in what terms the monies were received by the collector.

The duties of these federal and state officers, the collectors of the customs, and the collectors of the tolls upon the Erie Canal, are essentially different from those imposed upon our State, county, and corporation collectors, and the mode of transacting their business and settling their accounts is not the same; and it would be a misapplication of the principle, settled in the New York and Federal courts, to adopt the broad rule contended for by the defendants in this case, that all moneys paid in by the collector after the 3d of March, 1840, shall, in the absence of all proof, be presumed payments of the revenue of 1840.

Indeed, it would be impracticable, we think, to lay down any general rule by which a court or jury must, in such cases, be governed, without regard to circumstances.

Cases may be readily imagined in which the operation of such a rule would be as inequitable as the rule which we have declined adopting, in relation to the imputation of payment. A collector, a few days or weeks after the commencement of his second term, and before he has received the tax books of the second year, makes, we will suppose, a large payment, a default appearing charged against him for the former term. It would be a violent presumption to suppose that such payment was designed to anticipate a liability not yet created. In such a case, a court would be warranted in applying such payment to the previous indebtedness. So, in the case of Seymour *vs.* Van Slyck, a correspondence between the amount paid in and the amount charged at a previous settlement, was held such a coincidence as to warrant a belief that the payment was intended to extinguish the charge.

It may, however, be soberly said, that we will, in such cases, presume that an officer does his duty, until the contrary appears; and, therefore, when the officer is in the receipt of the revenue of a specified year, and chargeable with it, we will presume, in the absence of all proof on the subject, that payments made during that year are designed to extinguish the liabilities of that year: but in the absence of all proof of intention, payments made in the year 1840, before the collector was charged with the revenue of that year, must fall within the rule adopted in ordinary cases, and the payments be imputed to extinguish the oldest item of indebtedness.

The judgment will be reversed, and the cause remanded.