CHARLES W. GOETZ ET AL., Plaintiffs, Appellants, v. RUDOLPH F. PIEL ET AL., Defendants, Appellants.

**St. Louis Court of Appeals, June 2, 1887.**

1. REFEREES—FINDINGS—PRACTICE.—In actions at law, a referee's findings of fact are conclusive, but his conclusions of law, as applied to the facts found, may, if erroneous, be set aside, and the law properly applied by either the appellate, or the trial, court.

2. DEBTOR AND CREDITOR—APPLICATION OF PAYMENTS.—Payments on general account, not specially applied by either debtor or creditor, will be applied to the oldest items of the account.

3. ———— SECURED AND UNSECURED DEBTS.—Payments will be applied to the more precarious debts in preference to those which are secured.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded with directions.*

PATTISON & CRANE, for the plaintiffs, appellants: The court below erred in its view of the law. The court is mistaken in supposing that the referee found, as matter of law, that there had been no appropriation of the payments by the appellants. If the referee has made such finding of law, it is erroneous under his finding of the facts. 1 Am. Leading Cas. 342, *278; 344, 346, *280, 282; *Starrett v. Barber*, 20 Me. 457; *Allen v. Kimball*, 23 Pick. 473; *Upham v. Lefavour*, 11 Metc. 185; *United States v. Bradbury*, Davies, 151. If it be true that neither party made any appropriation of the payments, then the appropriation which the law will make is that made by the referee in his first report. 2 Benj. on Sales [Am. Ed.] 1109, note 36; [Corbin's Ed.]

964, 965 ; [3 Am. Ed.] sect. 748, note *u ;* 1 Am. Lead. Cas. 358, 359, *291, 292 ; *Field v. Holland*, 6 Cranch, 8, 27; *Bell v. Radcliff*, 32 Ark. 645, 665 ; *Bank v. Bigler*, 83 N. Y. 51, 63, 64. This being a running account, each payment will be held to have extinguished the earliest unpaid item in the account. *Truscott v. King*, 6 N. Y. 165 ; *Postmaster General v. Farbee*, 4 Mass. 355. The payments will be applied to the most precarious debt. 1 Am. Lead. Cas. 350, *285. Neither of these rules is rendered nugatory by reason of the fact that sureties are interested. *Poulson v. Collier*, 18 Mo. App. 607 ; *Bank v. Hill*, 10 Pick. 133 ; *Jones v. Kilgore*, 2 Rich. Eq. 63 ; *Harrison v. Johnston*, 27 Ala. 453 ; *Bank v. Benedict*, 15 Conn. 438, 444 ; *Lysaght v. Walker*, 5 Bligh [N. S.] 1. The allowance of interest only from the date of the suit was erroneous, as interest began to run before the suit was brought. *St. Louis Loan Association v. Augustin*, 2 Mo. App. 123 ; *The State v. Friedreich*, 10 Mo. App. 591.

HENRY N. HART, for the defendants, appellants.

LEO RASSIEUR and DEXTER TIFFANY, of counsel for the defendants, appellants.

THOMPSON, J., delivered the opinion of the court.

This action is brought to recover the penalty of a bond executed by the defendants to the plaintiffs, in the penal sum of two thousand dollars, to secure the performance by the defendant, Piel, of a contract between him and the plaintiffs, whereby they agreed to sell him as much Glencoe black lime, of their manufacture, as he should require during the year succeeding the date of the bond, at a stipulated price per bushel, provided they should have the same on hand ; and whereby he agreed to make payments for each month's purchases, at stated periods in such month. The petition alleges that he did not make payments as required by the contract, but that a sum in excess of the penalty of the bond is

due and unpaid, for which judgment is asked. The answer was in the nature of a plea of payment merely, leaving all the other allegations of the petition uncontroverted. The only issue at the trial was, whether payment had been made for the black lime furnished under the contract.

I. A jury was called, and, after some of the evidence had been heard, the court, perceiving that the decision of the facts involved the taking and stating of a long account, of its own motion, withdrew the cause from the jury and referred it to a member of the bar to try all the issues. Upon this ruling the defendant took a bill of exceptions. There was no error in this ruling. Rev. Stat., sect. 3606.

II. The referee took a large mass of testimony, from which it appeared that, during the year preceding the date of the present contract between the plaintiffs and Piel, a prior contract subsisted between the plaintiff, Goetz, individually, and the defendant, Piel, for supplying the defendant, Piel, with the same Glencoe black lime then manufactured by Goetz alone; that, subsequently, and while this contract was pending, namely, in February, 1881, a partnership was formed between the plaintiffs, Goetz and Cobb, and that this partnership continued the same business, and, during the remainder of the year embraced in that contract, continued to execute it by supplying to the defendant, Piel, the Glencoe black lime as therein stipulated; that Piel knew that the contract, although made with Goetz, individually, was being executed by Goetz and Cobb in partnership; that Goetz and Cobb also furnished to Piel, between the date of the formation of their partnership and December 28, 1881, the date of the termination of that contract and of the commencement of the present contract, various other articles, such as sand, hair, cement, and plaster; so that there was due from Piel to Goetz and Cobb, at the date of the termination of the old contract and of the commencement of the present contract for the black

lime and other articles furnished, a balance of $1,082. It, also, appeared that, on December 28, 1881, the defendant, Piel, entered into a contract with Goetz, one of the plaintiffs, individually, for the purchase of white lime, for the period covered by the contract in suit ; and that there were many occasions when it was more convenient for him to procure such lime in town, on which occasions, he purchased it from the plaintiffs, Goetz and Cobb. It, also, appeared that, aside from the black lime mentioned in the contract, the plaintiffs continued, during the year covered by the contract, to furnish Piel, as they had done before, with other articles than black lime, such as hair, sand, plaster, etc. Some of the payments made by Piel were in the form of checks, payable to the order of Goetz, alone, and were possibly intended by Piel to be applied in liquidation of the balance due on the account for the previous year, which, as already stated, was made under a contract originally entered into between Piel and Goetz, alone ; a great mass of them were drawn in favor of Goetz and Cobb, and where payments were made in notes, these notes were so drawn. Such checks as were drawn in favor of Goetz only, were indorsed by Goetz, and then by Goetz and Cobb, and went into their partnership account. No separate account was kept by the plaintiffs with Piel in respect of the black lime furnished under the contract, to secure which the bond in suit was given ; but all the goods, of whatever description, which were sold by Goetz and Cobb to the defendant, during the year covered by the bond in suit, were charged up to him in general account, and all the payments, of whatever description, made by Piel to the plaintiffs, were entered by them upon their general account with Piel, according to their respective dates ; and this general account was kept in such a form as to be merely a continuation of the general account of the preceding year. In the checks, which were drawn by Piel, and in the notes which he sometimes gave, no designation was made of the particular account to which

the payment was intended to be applied, except that a few of the checks, as above stated, were drawn in favor of Goetz, individually. Some oral evidence was given by the opposing parties, as to the manner in which they intended the payments. to be applied, but we see no evidence of any actual application of the payments, except as above stated. During the year covered by the contract secured by the bond in suit, the plaintiffs sold and delivered to Piel, 40,660 bushels of black lime, which, at the price fixed by the contract, amounted to the sum of $10,774.90. This is shown by the bill of particulars embodied in the petition, and stands admitted in the state of the pleadings. During the same period, as found by the referee, the defendant purchased from the plaintiffs other articles, consisting of white lime, sand, cement, hair, etc., so that his indebtedness to them amounted, in the aggregate, to $13,779.58. The referee, also, finds that, against this general aggregate of indebtedness, the total payments made by Piel amounted to $11,675, leaving a general balance due from Piel to the plaintiffs of $2,104.58, which is more than the penalty of the bond sued for.

The referee finds that no specific applications of any of these payments, made by Piel to Goetz and Cobb, was directed by Piel, or made by Goetz and Cobb. He accordingly finds, as a conclusion of law, that the payment should be applied to the successive extinguishment of the oldest items of indebtedness on the general account of Goetz and Cobb against Piel; and, stating the account on this basis, in his original report he recommended a judgment in favor of the plaintiffs, for the penalty of the bond sued on, with an award of execution in the sum of $1,774.46. Both parties filed exceptions to this report. The plaintiffs were dissatisfied with it, because it did not give them all they asked in their petition, and the defendants were dissatisfied with it because it gave the plaintiffs anything. The plaintiffs' exceptions were two, and the defendants eighteen, in number. The court overruled all these ex-

ceptions except the defendants' thirteenth and eighteenth. These two exceptions were as follows: "13. That the finding of the referee, of the sum of one thousand and eighty-three dollars, as a balance due by Piel to Goetz and Cobb, on first of January, 1882, is not supported by the evidence; and the law laid down by the referee on this head is bad, or, in other words, no law, and is error." "18. Because, from the evidence, legal and competent, in the case, and the law as applicable to the same, the defendants are entitled to a judgment and the finding by the referee set aside, and for naught held." While the court sustained this latter exception, which recited that, upon the law and the evidence, the defendants were entitled to judgment, the court did not render judgment to the defendants, but referred the case back to the referee to re-state his findings, in accordance with certain directions of the court. These directions are embodied in the referee's second report. They show that the only real point of difference between the court and the referee related to the principle of law which should govern the application of the payments. The court took the view that the payments should be applied in favor of the sureties who had no voice in directing the application, first, in the liquidation of the debt secured by the bond, and, afterwards, in the liquidation of the other indebtedness. Upon this principle the referee re-stated the account. He found that the last payment made by Piel, during the period covered by the contract, was made on December 5, 1882, and that, from that date to December 28, 1882, the end of the period embraced in the contract, Piel had purchased items of black lime to the amount $151.03. He, therefore, came to the conclusion, that, on the theory of the court as to the law, judgment should be rendered for $151.03. Stating the account in another form, he reached the same conclusion; and he, accordingly, recommended a judgment for the plaintiffs in this sum. To this report fifteen exceptions were filed by the plaintiffs, which the

court overruled, and entered judgment in accordance therewith.

One of these exceptions was, that certain of the payments show on their face that they were not intended to apply to the black lime account of 1882, and that the others show on their face that they were not intended to apply to that account exclusively. It is true that some of these payments, amounting to fifteen hundred and fifty dollars, appear to have been in the form of checks or notes, payable to Goetz, individually; though, as already stated, they were endorsed by Goetz and Cobb, and went into their partnership account. A number of other vouchers show payments made simply "on account," without any special designation as to what account. We mention these facts to show the difficulty of upholding the referee's second report. Certainly the conclusion is cogent, that checks drawn in favor of Goetz, individually, were intended to be applied upon the account which Piel had under his individual contract with Goetz, or else upon his current personal account with Goetz, under the white lime contract, and, in the absence of any other specific direction, we do not see the propriety of applying such checks in liquidation of the black lime account, which subsisted between Piel and the partnership firm of Goetz and Cobb. We must, however, remind the parties, as we are obliged to do in nearly every case of this kind which comes before us, that it is an action at law, and that we do not sit as a jury, or as a board of referees in such cases. Questions relating to the preponderance of the evidence, are, in such cases, properly addressed to the judgment of the trial court, on exceptions to the referee's report, but with such questions we have nothing to do. The referee's findings of fact, so far as they become material, are, in the view which we take of the law, conclusive upon us, although based upon conflicting evidence, and although, possibly, against the weight of the evidence. The exception of the plaintiffs, just stated, becomes immaterial in the view which we take of the law.

Upon the question of the rule which should govern the application of payments in this cause, we agree with the referee, and find ourselves unable to agree with the court. The rule, as stated both by the court and the referee, is, that it is the privilege of the debtor, when he makes a payment, to designate upon what account it shall be applied; that, if the debtor makes no such designation, then it is the privilege of the creditor to apply the payment in liquidation of whatever account against the debtor he may choose; and that, where neither the debtor nor the creditor has made the application, the law will make it, by applying it, in general, to the liquidation of the oldest items of indebtedness. *Draffen v. Boonville*, 8 Mo. 395; *McCune v. Belt*, 45 Mo. 174. Where some of the debts are secured, and others are not, it has been said that the law will apply the payments "as the justice and equity of the case might require." *Gantner v. Kemper*, 58 Mo. 567, 570. In an earlier case a general *dictum* is found, which has no reference to the rights of sureties, but which was delivered in a case where the rights of a creditor, against a third party, were concerned, that "if both parties omit the application of payments, the law will apply them, according to justice." *Benny v. Rhodes*, 18 Mo. 147, 153. But in neither of these cases is there any intimation that an application of the payments, according to justice, requires them to be made so as to exonerate a third party, or a separate fund, against whom, or upon which, the creditor had a security. So far as anything can be gathered from what was held in these two cases, it tends to support the contrary conclusion. Outside of this state, a mass of decisions may be cited where courts have held themselves bound, in cases where neither the debtor nor the creditor has made an application of payments, to apply them to those debts for which the security is most precarious. *Field v. Holland*, 6 Cranch, 8; *Gordon v. Hobart*, 2 Story, 243; *Chester v. Wheelwright*, 15 Conn.

562; *Bosley v. Porter*, 4 J. J. Marsh. (Ky.) 621; *Burks v. Albert*, 4 J. J. Marsh. (Ky.) 97; *Hammer v. Rochester*, 2 J. J. Marsh. (Ky.) 144; *Taylor v. Talbot*, 2 J. J. Marsh. (Ky.) 49; *Hillyer v. Vaughan*, 1 J. J. Marsh. (Ky.) 583; *Sager v. Warley*, Rice Ch. (S. C.) 26; *Heilbrom v. Bissel*, 1 Bailey Eq. (S. C.) 430; *Gregory v. Forrester*, 1 McCord Ch. (S. C.) 318; *Smith v. Wood*, 7 N. J. Eq. (Sax.) 74; *Pattison v. Hull*, 9 Cow. (N. Y.) 747; *Jones v. Kilgore*, 2 Rich. Eq. (S. C.) 63; *Baine v. Williams*, 18 Miss. (10 Sm. & M.) 113; *The State v. Thomas*, 11 Ired. Law (N. C.) 251; *Ramsour v. Thomas*, 10 Ired. Law (N. C.) 165; *Watt v. Hoch*, 25 Pa. St. 411; *McQuaide v. Stewart*, 48 Pa. St. 198; *Smith v. Brooke*, 49 Pa. St. 147. Decisions in other jurisdictions may, also, be found to the contrary; and this conflict of opinion illustrates the importance of having the matter determined by fixed and settled rules, so far as practicable. These decisions, for the most part, were made in cases where there were different debts, on account of different transactions, but not due by what is termed "running account." A very great concurrence of judicial opinion is to the effect that, where a running account subsists between the debtor and creditor, and payments are made on account, and no application of such payments is made at the time, by either party, the law will apply them to those items in the account which first accrued. *United States v. Kirkpatrick*, 9 Wheat. 720; *Fairchild v. Holly*, 10 Conn. 175; *Dows v. Morewood*, 10 Barb. (N. Y.) 183; *Berrian v. New York*, 4 Robt. (N. Y.) 538; *Horne v. Bank*, 32 Ga. 1; *Wendt v. Ross*, 33 Cal. 650; *Wheeler v. Cropsey*, 5 How. Pr. (N. Y.) 288; *McKee v. Commonwealth*, 2 Grant Cas. (Pa.) 23; *Shedd v. Wilson*, 27 Vt. 478; *Harrison v. Johnson*, 27 Ala. 445; *Postmaster General v. Furber*, 4 Mason (U. S.) 332; *Thurlow v. Gilmore*, 40 Me. 378; *Truscott v. King*, 6 N. Y. 147; *Cushing v. Wyman*, 44 Me. 121; *Berghas v. Alter*, 9 Watts (Pa.) 386. But, even in the case of payments on running accounts, it has been held that the rule of ap-

propriating the payments to the discharge of the earliest items of indebtedness will be departed from, by applying the payments, where there are several debts, to the one least secured, unless such a course would work prejudice to a surety. *Pierce v. Sweet*, 33 Pa. St. 151. Our brethren of the Kansas City court of appeals have had this question before them, in a recent case, and their conclusion is stated in the following paragraph of their opinion, delivered by Hall, J. :

"The court should have made such application, first, upon the note on which the defendant was not a surety. This should have been done under the rule laid down by Bliss, J., in the case of *McCune v. Belt* (45 Mo. 174), that the application should first be made upon the debt first maturing. And this should have been done, also, under that rule, which is more satisfactory to us, and better supported by reason and authority, that, where the money has been voluntarily paid, by the debtor, and no particular appropriation made by him, and no particular application made by the creditor, the court should first make the application upon the debt whose security is most precarious. *Field v. Holland*, 6 Cranch, 8, 29, opinion by Marshal, C. J., 1 Am Lead. Cas. 292, 296, and cases cited."

We are of opinion that this conclusion is the better conclusion, and that it is supported by the greater weight of judicial authority. Where the debtor, in making payment, does not direct the application, the presumption is, that he is willing to allow the creditor to do as he pleases, and, hence, the creditor may apply the payment to extinguish any preëxisting debt. If the creditor makes no other specific application of the credits than by entering them as credits in his general account with the debtor, it is a reasonable presumption that he is willing to allow them to be applied in liquidation of the oldest items on the debit side of the account ; and, as a general rule, the law will give effect to this presumption. But, where this rule is departed from, in special

cases, for the purposes of justice, it is generally done to prevent loss to the creditor, by applying the payments to those items which are least secure, or most precarious.

In the opinion and order re-committing the case to the referee, the learned judge cited three decisions of our supreme court in support of the view that, in the case at bar, the payments should be applied so as to exonerate the defendant's sureties. *Eddy v. Sturgeon*, 15 Mo. 199 ; *Draffen v. Boonville*, 8 Mo. 395 ; *The State to use v. Smith*, 26 Mo. 226. In the first of these cases (*Eddy v. Sturgeon*), the court based its decisions upon the terms of a written contract of guaranty, and, in concluding its opinion, said : "The construction we give to the guaranty in this case enables us to determine it, without noticing the numerous authorities in relation to the proper application of money, on payments made, without any directions how to apply it at the time." 15 Mo. 204. It thus appears that this decision does not control the decision of the question before us. The other two cases (*Draffen v. Boonville*, and *The State to use v. Smith*), hold that, in actions on the bond of an accounting officer, who serves during successive terms, with successive sets of sureties, in order to produce equality among the different sets of sureties, the collections made by the officer during each year will be applied to extinguish the liabilities of such year. This is, perhaps, a good application of the maxim, cited by the learned judge of the trial court, that equality among sureties is equity. Our supreme court, in declaring this rule, has confessedly made it an exception to the general rule governing the application of payments. The pinciple which underlies it does not seem to apply to the present case ; for here there is no question of equality among sureties, and there can be no question of equality among three parties, consisting of a creditor, a debtor, and a surety of a debtor. The surety makes himself answerable for the defaults of his prin-

cipal, and he stands exactly in the position in which the business dealings of his principal have put him. The precise rule of his liability is the rule which determines the liability of his principal. If, for instance, the question of the application of these payments should arise in a proceeding between the plaintiffs and the defendant, Piel, alone, we should feel bound to apply the rule of application to the earliest items of indebtedness; and the sureties of Piel, in an action on their bond, must be governed by the same rule, whether it worked for them or against them. We feel the difficulties which surround this question, but our conclusion is, that the court erred in requiring the referee to re-state the account upon a principle which applied the payments in exoneration of the sureties.

III. The defendants contend that, as the contract of 1880, upon which there was a balance due from Piel of one thousand and eighty-two dollars, as already stated, was a contract between him and Goetz, alone, and not between him and the partnership firm of Goetz and Cobb, the referee erred in holding that the general payments, made by Piel to Goetz and Cobb, should be applied first in extinguishment of this balance. We regard this as raising a question of fact, merely, which is concluded by the finding of the referee. Although the contract was with Goetz, alone, it was, subsequently to the formation of the partnership in February, 1880, executed by Goetz and Cobb, jointly, and, as there is evidence tending to show, with the knowledge of Piel. This authorized the referee to find that the indebtedness represented by the balance of one thousand and eighty-two dollars, was an indebtedness from Piel to the partnership firm of Goetz and Cobb.

IV. The contention of the plaintiffs, that they are entitled to a judgment for the entire penalty of the bond, is also regarded by the court here as depending upon conclusions of fact, which are put at an end by the decision of the referee, unless the amount of his finding

shall be swelled to the amount of the penalty of the bond by computing interest, as hereinafter stated.

V. . The referee has, however, in his finding of $151.03 in favor of the plaintiffs, omitted to compute interest from the date of the last payments, but has computed it from the commencement of the suit only. We are of opinion that the plaintiffs were entitled to have interest computed from the days on which the various payments became due, under the terms of the bond sued on. *The State ex rel. v. Friedreich*, 10 Mo. App. 591. It is true that the petition in this case does not, in terms, demand interest, as in the case just cited, but we regard this as immaterial, since the petition stated facts which, if true, show a larger amount due to the plaintiffs than the penalty of the bond, and prayed judgment for the whole penalty thereof.

The judgment of the circuit court will be reversed, and the cause remanded, with directions to enter judgment in conformity with the first report of the referee, after allowing the plaintiffs interest from the date of the accrual of the respective items which should have been paid, according to the terms of the bond, but were not paid. It is suggested that it will be proper, and perhaps necessary, for this purpose, to refer the case again to the referee. The plaintiffs appellants will recover the costs of this appeal. With the concurrence of Judge Rombauer, it is so ordered. Judge Lewis is absent. ·