## THE STATE EX REL. CHATHAM NATIONAL BANK V. FINN et al., Appellants.

1. **Offices and Officers:** OFFICIAL BOND: LIABILITY OF SURETIES. The general rule is that sureties on an official bond are only liable for breaches occurring after the execution of the bond, and are not liable for prior defaults, unless made so by the terms of the bond.

2. ——: ——: ——. A second official bond, given under the same appointment as the first, which recites that it is a new bond, given by order of the court, in lieu of the first, takes the place of the first bond and renders the sureties on it responsible for the officer's official conduct during his entire term.

3. ——: ——: ——: ATTACHMENT. Until a plaintiff recovers final judgment in an attachment suit, it cannot be known whether or not he has a valid claim on the officer for the proceeds of the attached property previously sold under orders to that effect, and a cause of action does not accrue against the officer and his sureties on that account until after such final judgment, notwithstanding the officer may have failed to pay the money to the clerk upon the order of the court made before judgment.

4. ——: ——: ——: LIMITATIONS. An action on a sheriff's bond is not barred by the statute of limitations where it is brought within three years after payments of money by the sureties in recognition of plaintiff's demand, such payments having been made before the running of the statute.

*Appeal from St. Louis City Circuit Court.*—HON. W. H. HORNER, Judge.

AFFIRMED.

*E. T. Farish* and *Valle Reyburn* for appellants.

(1) The making of the order of December 7, 1880, was such a demand upon the sheriff as to put in force the operation of statute of limitations. *State ex rel. v. Minor*, 44 Mo. 376 ; *Kirk v. Sportsman*, 48 Mo. 383 ; *State ex rel. v. Spencer*, 79 Mo. 314 ; *State ex rel. v. Lidwell*, 11 Mo. App. 567. (2) The statute of limitations, having once been set in motion, continued to run, and no act of the court or of the parties could, or did, suspend its operation. *Cunningham v. Snow*, 82 Mo. 593. (3) The subsequent order of the court, made in May, 1881, was not only irregular, but was without force or effect. When the previous order was made, the court had exhausted its authority in the premises. Such order served to clothe the clerk, as trustee for both plaintiff and defendant, with a right to demand and sue for the money in question. And the subsequent order, if it had any effect, was to transfer to the plaintiff the right which had been previously vested in the clerk ; but it was no new or additional right, other or greater than had been previously vested in the clerk as trustee for the plaintiff. (4) The partial payments made on account were made by Mr. Farish out of the funds which he held and had collected from the fees of ex-sheriff Finn, and which were applied and paid by said Farish for and in behalf of said Finn, and as indicated in the receipts put in evidence. The proof evidenced a transaction in which the securities were entirely eliminated. A part payment is regarded only

as evidence of a new promise, and before said part pay-
ment can have the effect of arresting the running of the
statute, it must be made either by the promisor, or by
some person clad with authority by him to make a new
promise on his behalf. *Shoemaker v. Benedict*, 11 N.
Y. 185; *Harper v. Fairley*, 53 N. Y. 445; *United
States v. Wilder*, 13 Wall. 256; *Anderson v. Roberson*,
24 Miss. 389; *Roscoe v. Hale*, 7 Gray, 274; *Kallanback
v. Dickinson*, 100 Ill. 431; *McClaran v. McMartin*,
36 N. Y. 90. (5) The money here sued for came into
sheriff Finn's hands in June, 1879, was converted early
as July, 1879, and the bond sued on was not given until
December, 1879. It, therefore, appearing that the
money was received during the running of the previous
bond, and that the money was not on hand when the
second bond was executed, the sureties on the second
bond are not liable. *Draffin v. Boonville*, 8 Mo. 395;
*The Statehouse v. Smith*, 26 Mo. 226–231; *The State-
house v. McCormick*, 50 Mo. 570; *Smith v. Paul's
Ex'r*, 21 Mo. 51; *Powell v. Taylor*, 6 Mo. App. ——.

*B. D. Lee* and *G. M. Stewart* for respondent.

(1) "Where an officer proves a defaulter and has
held the office under different appointments, with
several sets of sureties, it is now settled that those
sureties alone will be responsible on the bond at the
time when the defalcation occurred. *Draffin v. Boon-
ville*, 8 Mo. 395; *State v. Smith*, 26 Mo. 226, 231;
*State to use v. Atherton*, 40 Mo. 209, 220; *State to use
v. McCormick*, 50 Mo. 570. This, in the absence of a con-
trary intention, is the law even where the bonds are
successive bonds under the same appointment. *Smith v.
Paul's Ex'r*, 21 Mo. 51. But in this case the bonds were
given under the same appointment, and the contrary

intention is manifest by the terms of the bond. The bond was to stand in lieu, or in place of, the bond formerly given, and rendered the sureties responsible for the sheriff's conduct during his entire official term." *State ex rel. v. Finn*, 23 Mo. App. 294. To the same effect: *Steele v. Graves*, 68 Ala. 17; *Corprew v. Boyle*, 24 Grattan, 284; *Wentz v. Ledous*, 24 La. Ann. 131; *Miller v. Morre*, 3 Humph. (Tenn.) 189; *State v. Drury*, 36 Mo. 281.; *Ingram v. McCombs*, 17 Mo. 558; *State v. McCormick*, 50 Mo. 568. (2) The funds which the sheriff received in this case were subject to the order of this court R. S. 1879, sec. 425. The controversy over this fund was not ended until about the time the order of this court, which is set out in the petition, was made. Hence the statute did not begin to run until after the time limited in the order, after the copy of the order had been served, which was May 18, 1881. *State ex rel. v. Lidwell*, 11 Mo. App. 567–569; *State v. Minor*, 44 Mo. 373; *Kirk v. Sportsman*, 48 Mo. 383; *Succession of Hugh McCloskey*, 32 La. Ann. 146; *Thurston v. Blockston*, 36 Md. 501; *Bonner v. Young*, 68 Ala. 35; *State ex rel. v. Finn*, 23 Mo. App. 290.

RAY, C. J.—This is an action begun on May 9, 1884, against John Finn and sureties, on his official bond as sheriff of the city of St. Louis. The official bond was executed and approved December 27, 1879, and the condition of said obligation is that: ".Whereas the said John Finn was, on the fifth day of November, 1878, duly and regularly elected sheriff of the city of St. Louis, and was duly commissioned, and whereas, by order of the circuit court made on the twenty-ninth day of November, 1879, said John Finn was ordered to give a new bond in lieu of the bond approved on November 21, 1878: Now, therefore, the condition of the above obligation is such that if the said John Finn

shall well and faithfully in all things discharge the
duties of the office of the sheriff of the said city of St.
Louis during his continuance in the said office, then the
above obligation to be void, otherwise to remain in full
force and effect." The special necessity for this second
bond is not disclosed by the record, but it is fair to
presume, that for some reason apparent to the court, the
original bond was deemed insufficient. See sections
594, 3881, 3882 and 3892 of the revision of 1879.

The breach of the bond alleged in the petition is a
failure of Finn, after his election as sheriff at the gen-
eral election in 1878, to pay over the proceeds of prop-
erty sold by him, under a certain attachment, issued
and received on the twenty-sixth day of May, 1879, in a
certain cause, entitled the Chatham National Bank,
plaintiff, *vs.* Meyer Goldsoll, defendant. The net
balance, after deducting, fees, costs and payments made
on the amounts originally collected, was $1985.69, for
which sum plaintiffs had judgment. The sureties inter-
pose two defenses to the action : First, that at the time
they executed said bond as sureties of the said Finn, he
did not have on hand the said money or proceeds of sale
received by him under the said attachment proceeding ;
second, a plea of the three years' statute of limitations,
in effect that in June, 1879, said Finn made his sheriff's
return of the order of sale in said attachment suit, and
in November, 1880, his term of office as sheriff expired,
and that on December 7, 1880, by consent of said
plaintiff, an order was made on said Finn, to pay the
proceeds of the sale, less his legal fees, etc., to the clerk
of the circuit court, and that a demand was thereby
made on said Finn, by the said plaintiff and defendant in
said attachment suit, for the said proceeds, and that the
present cause of action then accrued, and that the
present suit was not brought in three years thereafter.

On the other hand, the claim and contention on the
part of the plaintiff is, that, under the bond sued on,

defendants are liable for defaults of the sheriff during the entire term of office, and further, that the statute of limitations did not begin to run before May 16, 1881, at which date the prior order of December 7, 1880, to pay said proceeds of the said sale to the clerk was set aside, and that the further order, then made by the court, that the net proceeds of the sale in said attachment suit, then in the hands of said Finn as sheriff, be paid over by him to the plaintiff in said cause.· And plaintiff further claims that defendants have waived the statute of limitations, by part payments of the demand within the three years prior to the institution of the suit, to-wit : on July 9, 1880, July 20, 1881, and September 20, 1882.

As to the first of said defenses, there is testimony in defendant's behalf, on the part of the sheriff's book-keeper and cashier, that said Finn kept his accounts and deposited all the money received by him as sheriff, in the Bank of Commerce, and that between May 5, 1879, and July 9, 1879, inclusive, said Finn received and deposited the sum of $35,142.95, and that during the same period he drew out by his checks on said bank the sum of $38,983.67, leaving a deficit on said last-named day of $3,840.72. Upon evidence to this effect, the defendant asked, and the court refused, an instruction to the jury to the effect, that if they believed from the evidence, that after. the money sued for was collected by Finn as sheriff in May or June, 1879, he converted the same to his own use as early as August, 1879, and did not thereafter in December, 1879, when the bond sued on was given, have said money on hand, then the defendant's sureties are not liable therefor.

The general rule is, that such sureties are only liable for breaches occurring after the execution of such bonds, and are not liable for prior defaults, unless made so by terms of the bond. *State to use v. Jones*, 89 Mo. 480 and cas. cit. The bonds in question are given, it will be observed, under one and the same appointment,

and the recital of the bond is that it is a new bond, given by order of the court, in lieu of the first bond approved November 21, 1878. These terms and recitals as the second bond are such as to give it a retrospective operation, as was held by the St. Louis court of appeals, in the recent case of *State ex rel. v. Finn*, 23 Mo. App. 293; which was a suit on this same bond, and in which, the court, speaking through ROMBAUER, J., use this language: "The defendant sureties contend, that they became by the terms of the bond responsible only for such defaults of their principal as occurred thereafter, and not for his defaults during his entire official term, and that the evidence tending to show that the default occurred, prior to the date of the bond, should have been submitted to the jury. This view is not tenable. The bond sued upon, by its terms, purports to take the place of the one originally given, which, for some reason, was deemed insufficient. Where an officer proves a defaulter, and has held the office under different appointments, with several sets of sureties, it is now settled that those sureties alone will be responsible, who were on the bond at the time when the defalcation occurred. *Draffin v. Boonville*, 8 Mo. 395; *State v. Smith*, 26 Mo. 226, 231; *State to use v. Atherton*, 40 Mo. 209; *State to use v. McCormick*, 50 Mo. 570. This, in the absence of a contrary intention, is the law, even where the bonds are successive bonds, under the same appointment. *Smith v. Paul's Ex'r*, 21 Mo. 51. But in this case, the bonds were given under the same appointment, and the contrary intention is manifest by the terms of the bond. The bond was to stand in lieu, or in place, of the bond formerly given, and rendered the sureties responsible for the sheriff's conduct, during his entire official term." This view is equally applicable to the case at bar on this branch of the case, and may be accepted as conclusive on that point.

But as the second branch presented by the special statute of limitation, the facts of this case are different

from those in 23 Mo. App., *supra*, and require a different ruling or statement on that point, as we shall see. In this connection, we may add that as to the second defense, interposing the special statute of limitation, the evidence shows that the property, attached in the attachment suit of plaintiff against said Goldsoll, was sold on June 10, 1879, upon orders of sale theretofore made ; that due return was then made on said orders showing amounts realized, etc., and that on December 7, 1880, by stipulation between plaintiff's attorney and counsel for Finn, the circuit court made its order in said attachment cause, directing the money, less the fees, costs, etc., in the hands of said John Finn, late sheriff of the city of St. Louis, being the proceeds of the sale of the attached property, to be paid over to the clerk of said court.

Defendants contend in this behalf that said Finn, having disobeyed and failed to comply with said order, was then in default, and a breach of his official bond, in respect to the faithful distribution and payment of said moneys, was then and there committed ; that such order of December 7, 1880, was such a demand on the sheriff as to set the statute of limitation in motion, and that the subsequent order of the court to pay said money over to plaintiff had no effect as to the running of the statute. Defendant asked several instructions upon the said facts in evidence, presenting their views in this behalf, all of which the court refused.

Revised Statutes, 1879, section 425, provides, among other things, that the officer shall make return of the order of sale to the court at such time as shall be expressed in the order, showing how he has executed the same, and that the proceeds of such sale shall be paid into court, or otherwise disposed of, as the court or judge may order. In the case now before us, there were, as thus appears, two orders of the court, the first being the said order of December 7, 1880, requiring the

said proceeds to be paid to the clerk of the court, which said order was set aside, as we have seen by a subsequent order of date May 16, 1881, directing the late sheriff to pay over the same to plaintiff. The second order was based upon an application and showing to the court that the plaintiff had, since the making of the first order, obtained judgment against the defendant in the attachment suit, and in virtue thereof was entitled to receive the said net proceeds. The judgment in the attachment suit was obtained on January 3, 1881, and the second order of May 16, 1881, above referred to, was served on said Finn on May 18, 1881. Pending the litigation in the attachment suit, and prior to the judgment therein, plaintiff could not compel the sheriff to make payment to it of proceeds of the sale of the attached property, for its right thereto was not ascertained until the controversy was determined.

The said order of December 7, 1880, which was entered upon agreement between the parties, did not give plaintiff the right to the said funds, but, in terms directed the same to be paid over, not to plaintiff, but to the clerk of the court. The manifest purpose of the said order was to place the funds in the custody of the court to await the result of said litigation. Plaintiff's right to demand the same of the clerk, if said order has been obeyed, or if disobeyed, its right to demand the same of said Finn, depended, we think, on the result of said litigation. So, too, with respect to the damages which plaintiff sustained, if any. There is, we think, as pointed out by the court of appeals, a distinction between the cases of sales in execution, and in partition, cited by defendant, and proceedings under the attachment law. In *State ex rel. v. Finn, supra*, the court of appeals says: "The execution creditor, or distributee in partition, has a vested interest in the fund, which gives him a right in one case to demand its immediate payment to him, and in the other to intervene at

once for its protection. It is not so in attachment proceedings. The interest of parties to the attachment suit is contingent upon the termination of the controversy. Suppose the plaintiff in the present proceeding had sued the sheriff for a conversion of the fund prior to any adjudication that he was entitled to it, will it be contended that he could have recovered, if at all, substantial damages?"

In the case of *Lesem v. Neal*, 53 Mo. 419, it is held, among other things, that the cause of action against the sheriff for an unauthorized release of attached property, accrues only at the date of final judgment in the attachment suit. Until plaintiff recover its judgment, in the attachment suit, it was not known whether or not it had any valid demand on the said Finn in respect to this fund, or had suffered any substantial damage by his failure to pay over the same to the clerk. Notwithstanding such neglect, said officer may have been able and have stood ready to pay the same to plaintiff on demand after its right thereto had been adjudicated, or upon a subsequent order of the court to that effect.

As to the second defense, or the three-year statute of limitation made and relied on in this case, the facts pertinent to that issue, as shown by the record, are, as we understand, about these: This suit was commenced May 9, 1884. The final judgment in the attachment suit was rendered January 3, 1881. The *application* for order on sheriff, to pay over to plaintiff the funds in question was made May 13, 1881. The order asked for was made May 16, 1881, and served on Finn, the defendant, May 18, 1881. It thus appears that this action was not commenced, *within three years* after the *date* of said final judgment, in said attachment suit. It does appear, however, that it was brought *within three years* after the application, making and service of said order on sheriff Finn, the defendant.

It, however, further appears that the defendants, to-wit: The sureties on said official bond of said sheriff Finn, through their trustee, agent or attorney, in fact, *thereafter*, to-wit: On July 9, 1881, paid on plaintiff's said demand five hundred dollars, and on July 20, 1881, the further sum of fifteen hundred dollars, and on September 20, 1882, the further sum of $501. If it be conceded that plaintiff's right to demand and sue for the funds in question, *accrued* at the *date* of the *final judgment* in the *attachment suit*, to-wit: On January 3, 1881, then the suit is barred. But if it be held that it did not accrue until the service of said order of court on the sheriff, to-wit: On the eighteenth of May, 1881, then the suit is not barred. But, without deciding that question, and whether it be the one, or the other, we are of opinion that the defendants, by their subsequent payments on plaintiffs' said claim and demand, thereby waived the bar of said three-year statute of limitations so set up and relied upon in said answer. *Shannon v. Austin*, 67 Mo. 485; *Johnson v. Johnson*, 81 Mo. 431; *Mastin v. Branham*, 86 Mo. 644; *Chidsey v. Powell*, 91 Mo. 626, and the authorities therein cited.

This leads to an affirmance, and it is so ordered. BLACK and BRACE, JJ., concur; BARCLAY, J., not sitting. SHERWOOD, J., absent.