HIBERNIA BUILDING ASSOCIATION NO. 2, Respondent, v. JAMES T. BRADY et al., Defendants; JOHN DOCKERY and JOHN McMAHON, Appellants.

**St. Louis Court of Appeals, December 14, 1909.**

1. **PRINCIPAL AND SURETY: Building and Loan Association: Secretary's Bond: Construction.** A bond given by the secretary of a building and loan association after he had assumed that office, which, in its preamble, refers to the election of the principal obligor as secretary and names the date of commencement of his term of office and refers to the by-laws requiring a bond, and which is conditioned that the principal shall account for all moneys coming into his hands during the continuance of his office, covers his entire term of office, and an action will lie thereon for a defalcation occurring during such term, before the bond was executed.

2. **APPELLATE PRACTICE: Finding of Fact Conclusive.** A finding of fact by the trial court will not be disturbed on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for appellant.

The liability of appellants began with the date of their bond. (a) Because the undertaking written in this bond referred only to the future conduct of the principal Brady. Appellants, when they signed this bond May 13, 1902, promised that Brady should thereafter perform the duties required of him, and that he should faithfully account for all monies that might come into his hands during the continuance of his office. The rule is that bonds of this character cannot be carried beyond

their terms or be extended by implication; and that the undertaking of a surety is such that "he cannot either at law or in equity be bound further or otherwise than he is by the very terms of his contract." Blair v. Perpetual Ins. Co., 10 Mo. 560; Nolley v. Callaway County Court, 11 Mo. 447; City of St. Louis v. Sickles, 52 Mo. 122; Nofsinger v. Hartnett, 84 Mo. 549; Schuster v. Weiss, 114 Mo. 166. (b) The general rule is that bonds can be given effect only from and after their date, and that the sureties therein are not liable for past defaults of the principal unless made so by express language of the bond. State to Use v. Jones, 89 Mo. 470; State to Use Catham Nat. Bank v. Finn, 98 Mo. 532; Bauer v. Cabanne, 105 Mo. 110; Brandt on Suretyship Guaranty, sec. 34 (3 Ed.); 2 Sutherland on Damages (3 Ed.), sec. 480; Hyatt v. Sewing Machine Company, 41 Mich. 225; Bartlett v. Wheelock, 195 Ill. 445. (c) There was no consideration to support or render valid and binding a promise of the appellants to make good a past default of their principal. A voluntary promise made orally or in writing to pay the past debt or liability of another is regarded in law as without consideration and therefore not enforceable. Kennerly v. Martin, 8 Mo. 698; Greenbaum v. Elliot, 60 Mo. 25; Musick v. Dodson, 76 Mo. 624; Brandt on Suretyship Guaranty, sec. 26 (3 Ed.). (d) The words "during the continuance of his office" contained in defendant's bond pointed to the future only, and to the termination of the term of office which Brady was then holding, and the expiration of a reasonable period thereafter to enable his successor to qualify. He was re-elected in February, 1903, and required to give a new bond for $2000, which he could have done before the next monthly meeting of the board on March 5, 1903, Endlich on Building Associations, sec. 204, p. 180; Building & Loan Association v. Price, 16 Florida 204; Chelnesford Company v. Demarest, 7 Gray 2; Dover v. Twombly, 42 N. H. 69; Savings & Loan Co. v. Association, 48 Pa. St. 446; Loan Assn. v. Nu-

gent, 40 N. J. L. 215; South Carolina Society v. Johnson, 1 McCord (S. C.) 41. A distinction has been made between bonds of public officers and bonds given to private corporations, and as to the latter the courts of this State have laid down the rule of their termination shown by the foregoing authorities: Bank v. Hunt, 72 Mo. 597; Harris v. Babbett, 3 Dillon Cir. Ct. Rep. 191.
(e) When appellants signed this bond nothing in its language or in the transaction itself indicated that they were assuming liability for past acts of the principal, and the court in construing it should place itself in a position of the parties when they entered into it. B. L. Association v. Obert, 169 Mo. 507.

*Carl Otto* for respondent.

STATEMENT.—Action on bond conditioned as follows:

"Whereas the said James F. Brady was on February 5, 1902, duly elected secretary of Hibernia Building Assn. No. 2, and the by-laws of said association and its board of directors required the secretary to execute a bond to the association for the faithful performance of his duties as said secretary in the sum of two thousand dollars. Now, if the said James F. Brady, shall do and perform all the duties required of him by virtue of his said election, and shall faithfully account for all moneys that may come into his hands during the continuance of his office then this obligation shall be void; otherwise it shall remain in full force and effect."

The bond was dated May 13, 1902, was approved by the board of directors of the plaintiff, May 17, 1902, and by the circuit court of the city of St. Louis, October 29, 1902, and filed with the State Supervisor of Building & Loan Associations, November 3, 1902.

The petition averred that Brady was elected secretary on February 5, 1902, and thereupon entered upon his duties as such and continued as secretary until June, 1905, on successive annual elections, the term of office

prescribed by the by-laws of plaintiff being one year. The breaches assigned on the bond are that from February 5, 1902, to February 5, 1903, there came into his hands as secretary $2000 and over, of which he converted some $1500 to his own use, and that in the years 1904 and 1905, "whilst said bond was still in force there came into the hands of said Brady, as secretary, moneys of the plaintiff amounting to $3500, of which he also converted to his own use $2500." Judgment and execution are asked for $2000, the full penalty of the bond. Brady filed a general denial by way of answer.

The answer of Dockery and McMahon admitting the execution of the bond, the election of Brady as secretary, on February 5, 1902, and annually thereafter each succeeding February, and his continuance in office until September 25, 1905, denied the breaches assigned, and denied that the bond was in force over or covered any period after February 4, 1905, and "a reasonable time within which such new bond could have been given," which "reasonable time" is alleged to have been until March 5, 1903. It is further averred in this answer that on the re-election of Brady in February, 1904, the board ordered that he give a bond in the sum of $2000, but that Brady did not give a bond nor had he ever given any bond other than the one in suit, nor had any mention or requirement of a bond been made after February 5, 1904. It is also averred that the by-laws of the plaintiff in force from 1902 to 1905, both inclusive, fixed the term of directors, from among the members of which board the secretary is required to be selected, at one year, and that prior to 1902, Brady had been repeatedly elected a director and the secretary of the company; that on the first Wednesday of January, 1902, he was re-elected a member of the board and "at the first meeting of the new board, held thereafter on the first Wednesday of February, being February 5, 1902, he was re-elected secretary; that these elections were

both for one year after February 5, 1902; that at th
meeting of the board on February 5, 1902, Brady was
required to give a bond for two thousand dollars, and
that thereafter, on May 13, 1902, he and these defend-
ants as sureties executed the bond declared on by plain-
tiff." It is then averred that between the date of the
bond, May 13, 1902, "and the following fifth day of
March, 1903," defendant Brady, as secretary, received
of the moneys of plaintiff $25,676.64, and no more, and
during that period paid out and accounted for $25,404.-
01, leaving unaccounted for by him to plaintiff $272.63,
"and that as to any deficits of defendant Brady, as sec-
retary of plaintiff prior to said May 13, 1902, or subse
quent to March 5, 1903, these defendants aver that they
are not chargeable therefor upon the bond here sued on,
or as sureties therein."

The reply was a general denial of these averments.

The trial was before the court, a jury being waived
and there was practically no dispute of the facts as
above set out, as stated in the pleadings.

There was evidence tending to show that the
amount of the defalcation between May 5, 1902 (or May
13, 1902, which appellants' counsel say is substantially
the same), and March 5, 1903, was $272.63, according
to appellants, or $349.42, as claimed by plaintiff.

The appellants asked several declarations of law,
all drawn on the theory that plaintiff was limited in its
recovery to the defalcation occurring between May 13,
1902, the date of the bond, and March 5, 1903, which is
allowed to be "a reasonable time" after the expiration
of the term, and that this defalcation amounted to
$272.63. The court refused each of them as asked, giv-
ing them, however, with the dates changed so as to limit
the time for which appellants could be held for any de-
falcation to the transactions between February 5, 1902,
and February 4, 1903; the court specifically declaring
that the appellants, as sureties, were not liable for any
defalcations occurring prior to February 5, 1902, or

subsequent to February 4, 1903. The defendants Dockery and McMahon duly saved exceptions to the action of the court in refusing to give the declarations as asked and to giving them as altered. The court found in favor of plaintiff and against all the defendants in the sum of $1217.89, with interest from date of commencement of the suit, and awarded judgment forfeiting the bond and awarding execution for $1281.64, and costs. From this 'he defendant sureties duly perfected their appeal to this court.

REYNOLDS, P. J. (after stating the facts).—On consideration of the facts as above set out, we think this case is covered by the decisions of our Supreme Court in State ex rel. Chatham Nat. Bk. v. Finn, 98 Mo. 532, and North St. Louis B. & L. Assn. v. Obert, 169 Mo. 507.

We think that construing the bond on its face, it is apparent that it was intended to cover the whole term for which Brady had been elected on February 5, 1902. That it was so construed by the parties, that is, the principal and the obligee, plaintiff here, is made clear by the fact of the requirement of a new bond at the end of the year. While this understanding between these parties may not be binding on the sureties, the recital of the term of office in the bond itself is notice to the sureties that plaintiff intended to cover the acts of the principal for his whole term of office. The preamble to its condition refers to the election of Brady on February 5, 1902, and refers to the by-laws as requiring a bond, while the condition is that Brady account for all moneys coming into his hands during the continuance of his office. That is, it named the date of the commencement of his term of office and provided for his faithful conduct in office during the term thereof. Under such plainly written condition, it seems clear to us that all the parties to it understood that the bond covered the year of the term. The statute itself, Revised Statutes 1899, section 1359, requires a bond covering the term of

office. So that we find no error in the action of the trial court in holding that the bond covered at least the year of the term of the office. As the court excluded all claims outside of this, and plaintiff makes no complaint, it is unnecessary to go into that question. The determination of the amount of the defalcation within this term was purely and solely a question of fact; we cannot disturb the finding of the court on that. On the authority of the cases above referred to, the judgment is affirmed. All concur.